WEIR *et al.*, *Petitioners.* v. MARLEY.

1. **Habeas Corpus**: RES JUDICATA. The doctrine of *res judicata* does not apply in cases of *habeas corpus* to judgments remanding a prisoner.

2. ——— : ———. Nor does it apply to judgments discharging a prisoner, where there is a new state of facts warranting his restraint.

3. ——— : ———. It does, however, in the absence of such a new state of facts, apply to a judgment discharging a prisoner.

4. ——— : ——— : INFANTS. The same principles apply in proceedings relating to the custody of infants as in cases of persons detained under criminal charges.

5. ——— : ——— : ———. The judgment of a circuit court judge discharging an infant from the custody of the petitioners is a bar to a like petition presented, on the same state of facts, to the supreme court.

6. .**Parent and Child**: CONTRACT AS TO CHILD'S CUSTODY. A father cannot, by contract, except in cases of adoption or apprenticeship provided for by statute, make an irrevocable contract giving another the custody of his minor child.

7. ——— : ——— : PRESUMPTION. The law presumes, until otherwise shown, that it is to the interest of the child to be in the custody of the parent.

*Habeas Corpus.*

CHILD REMANDED TO CUSTODY OF RESPONDENT.

*Boyd & Delaney* for petitioners.

(1) Respondent, J. W. Marley, by contract and agreement. relinquished his parental control over the

child Louise, and surrendered the same to the petitioners herein. That such contract is valid and binding on J. W. Marley, especially as he permitted petitioners for years to discharge the obligations of parents and permitted the affections of the child to become attached and a current given to her life. The right of a parent to the custody of children springs from and is dependent upon a discharge of the duties imposed upon him to protect and maintain and educate them according to his position in society. Therefore, when this duty is not discharged, the father forfeits his right to the custody. This may be by immorality, abandonment, inability or contract. Such contract cannot be avoided by the parent unless a breach be shown or unless abuse of the child is shown. It is voidable by the infant or by a court when a case is presented showing that a change is demanded by other considerations than those of the natural rights of the father, which were previously released. Hurd on Habeas Corpus, 537; Tyler on Infancy and Cov. 284; Church on Hab. Corpus, sec. 444; *McDowle's Case*, 8 Johns. 328; *In re Joe Murphy,* 12 How. Pr.; *Dumars v. Gwinne*, 10 Allen, 274; *Bonnett v. Bonnett*, 61 Iowa, 199; *State v. Smith*, 6 Greenl. Me.; *State ex rel. Lynch v. Bratton,* (Del.) reported in 15 Am. Law Reg. (N. S.) 362; *In the matter of O'Neil*, Rep. in 3 Am. Law Rev.; *Clark v. Boyer*, 32 Ohio St. 310; *Ellis v. Jessup*, 11 Bush (Ky.) 414; *Varney v. Young*, 11 Vt. 258; *Woodell v. Coggeshell*, 2 Met. (Mass.) 92; *People ex rel. Wehle v. Weisenbach*, 60 N. Y. 385; *Poole v. Gott*, 14 L. R. (Mass.) 269; *Com. v. Dougherty*, 1 Pa. Leg. Gazette; 9 Am. and Eng. Encyc., pp. 241–243 and notes. (2) But granting, for the sake of argument, that a mere contract, as such, is not binding on the father and that gifts of this character are revocable, yet such revocation must be timely. Cases cited *supra* and *Chapsky v. Wood*, 26 Kan. 650; 25 Kan. 308. (3) Nor can the objection be successfully

urged that the contract is void because Mrs. Weir at the date of the same was a married woman. *Jones v. Cleghorn*, 54 Ga. 10 ; *Bentley v. Terrey*, 59 Ga. 555. (4) When the contract in this case was made, the law in such cases had been declared by the courts of Kansas; it being thus valid by the laws of Kansas, such contract will be enforced here unless it contravenes some well-settled rule of public policy of this state. It does not contravene any well-settled rule of public policy of this state. *In re Clements*, 78 Mo. 352. Our laws declaring that the father, and, upon his death, the mother, are the natural guardians of minor children are simply declaratory of the common law, and do not prevent a parent from relinquishing control of his children, and do not prevent a court in a proper case by writ of *habeas corpus* from depriving a parent of such custody. Neither does our law governing adoption nullify such contracts. See *Harrington v. Utterback*, 57 Mo.; *State v. Sturtevant*, 57 Mo. 519.

*J. H. Morrison* and *Goode & Cravens* for respondent.

(1) We take it, it will be conceded, that, primarily, the father is entitled to the custody of his minor children and that he cannot be deprived of his natural or legal right, unless the facts of the case bring him within some exception to the general rule; and, as applicable to this case, we understand these exceptions to be: (*a*) Where the father is incompetent or an improper person to have the care and custody of his child. (*b*) Where the enforcement of the general rule would obviously destroy the happiness and well-being of the child. *In the matter of Scarritt*, 76 Mo. 565; *Chapsky v. Wood*, 26 Kan. 650, and cases cited herein. This case does not come within either of the exceptions above suggested. See further : *Brinster v. Compton*, 68 Ala. 299, referred to in Church on Habeas Corpus, sec. 442; *United States v. Green*, 3 Mason, 482; Church on Habeas Corpus, secs.

441-2; *Jones v. Darnall*, 103 Ind. 569; s. c.,53 Am. Rep. 545; *Sturtevant v. State*, 15 Neb. 459; s. c.,48 Am. Rep. 349; *Moore v. Christian*, 56 Miss. 408; s. c.,31 Am. Rep. 375. (2) The contract, such as that claimed by petition- ers, is not irrevocable. *In the matter of Scarritt,* 76 Mo. 565; *Chapsky v. Wood*, 26 Kan. 650; *State v. Libby*, 44 N. H. 321; *State v. Baldwin*, 5 N. J. Eq. 454; *Johnston v. Terry*, 34 Conn. 259; *Brooks v. Logan*, 112 Ind. 183; *Mercein v. People*, 3 Hill,399. (3) Proceedings in *habeas corpus* are binding and conclusive on the parties, while the same state of facts exist, unless reversed on *certiorari*, writ of error or appeal. *Mercein v. People*, 25 Wend. 64; *State v. Banks*, 25 Ind. 495; Church on Habeas Corpus, sec. 387; Herman on Estoppel and Res Adjudicata, secs. 106, 107 and 111; *Kalish v. Kalish*, 9 Wis. 529; *Stowell v. Chamber*, 60 N. Y. 272; *State v. Howe*, 9 Mo. 682; *Ferguson v. Ferguson*, 36 Mo. 197.

BRACE, J.—The issues in this case arise upon the return of the respondent to a writ of *habeas corpus* issued by SHERWOOD, J., on the ninth day of September, 1889, returnable to the supreme court at the October term thereof. By which the petitioners who are hus- band and wife and the maternal grandparents of Louise Marley, an infant aged six years on the sixth day of May, last past, seek to recover the custody of said infant from the respondent, who is the father of said infant, and who on the same day, before W. D. HUBBARD, judge of the circuit court within and for Greene county, on writ of *habeas corpus* had theretofore recovered the said infant from the custody of the petitioners.

The parties to this suit and to that before Judge HUBBARD are the same. The state of facts on the same day and almost within the same hour within which that adjudication was had, and this writ was issued, are the same. The facts stated in the return of the petitioners to the writ of Judge HUBBARD, and those stated by

them in the petition herein are substantially the same, and the question, whether the discharge of a party in custody, by writ of *habeas corpus*, by a court or officer of competent jurisdiction, is final and conclusive as to the legality of such custody upon the then existing state of facts, is presented by the facts in the case, and we are requested to express an opinion thereon, though not formally pleaded as an estoppel.

Treating this case for the present as a normal one, in which a party, charged to be illegally restrained of his liberty, and for whose relief a writ of *habeas corpus* is the appropriate remedy, and who has by such writ been discharged from that restraint by a tribunal competent to so discharge him, is such discharge final and conclusive? That the doctrine of *res adjudicata* is not applicable to the case of a refusal to discharge, and that the prisoner is entitled to the opinion of all the courts or officers authorized in a given cause to issue the writ as to the legality of his imprisonment, is conceded, and is not limited in this state by statutory enactment, except in the one particular that the applicant for the writ in his petition must state "that no application has been made or refused by any court officer or officer *superior* to the one to whom the petition is presented." Subject to this limitation one restrained of his liberty may in succession apply to every court or officer authorized to issue the writ, notwithstanding another court or officer having jurisdiction may have refused to issue it or to discharge him from such restraint, "and from such refusal no appeals will lie," as was held in *Howe v. State*, 9 Mo. 682. The reason assigned in that case being that "the refusal to grant a discharge is not a final judgment from which an appeal will lie to this court," and in *Ferguson v. Ferguson et al.*, 36 Mo. 197, where an order had been made by the circuit court discharging one child from and remanding two other children into the custody of the father, on a writ issued upon the petition of the

mother, appealed from to this court, it was ruled that, "so far as the decision discharged or remanded the persons restrained, this court has no appellate jurisdiction to interfere with it, and no appeal lies to this court in such case, citing, *Howe v. State, supra:* "In this respect the decision is not of the nature of a final judgment. It concerns only the present actual condition of things, and the order of the court is at once executed and accomplished beyond recall, and in reference to any new state of facts existing afterwards the parties have the same remedies as before, whether by writ of *habeas corpus* or other proceedings in any court of competent jurisdiction."

From these cases may be deduced the doctrine that the principle of *res adjudicata* does not apply in cases of *habeas corpus* to judgments remanding the prisoner, or to judgments discharging the prisoner, where a new state of facts, warranting his restraint, is shown to exist different from that which existed at the time the first judgment was rendered. That it does apply to a judgment discharging the prisoner, where no such new state of facts is shown, may as readily be deduced from the case *Ex parte Jilz*, 64 Mo. 205. The distinction thus made between judgments remanding, and those discharging the prisoner, grows out of the nature of the writ whose *raison d'etre* is the protection of personal liberty.

It loses none of its characteristics when used for the purpose of obtaining the custody of children, and the same analogies ought to obtain in such cases as when used simply for the purpose of discharging a prisoner from illegal restraint. If this be so, then the judgment of a court or officer of competent jurisdiction, discharging the infant in this case from the custody of the petitioners on the ninth day of September, 1889, on writ of *habeas corpus*, ought to be a complete answer to their petition, presented on the same day to another

court or officer of like jurisdiction, for a like writ to recover that custody from the same person to whom it was awarded, setting out the same grounds for such recovery in their petition as was set up in their return to the former writ,—and this conclusion would not be inconsistent with the actual rulings in the cases cited from this state, or the nature of the writ, and would be sustained by authority elsewhere. *Mercein v. People*, 25 Wendell, 64; *People v. Mercein*, 3 Hill, 399; *People ex rel. Lawrence v. John R. Brady et al.*, 56 N. Y. 182; *Com. v. McBride*, 2 Brewster, 545; *In re Da Costa*, 1 Parker Crim. Cases, 129; *Brooke v. Logan*, 112 Indiana, 183; *Spalding v. People*, 7 Hill, 301; *People v. Burtnett*, 5 Parker Crim. Cases, 113; *McConologue's Case*, 107 Mass. 154; Freeman on Judgments [3 Ed.] sec. 324; Church on Habeas Corpus, secs. 386 and 387.   And might be placed upon the ground thus stated in Freeman, *supra :* " The principles of public policy requiring the application of the doctrines of estoppel to judicial proceedings, in order to secure the repose of society, are as imperatively demanded in the cases of private individuals contesting private rights under the form of proceedings in *habeas corpus*, as if the litigation were conducted in any other form.   Otherwise, as is well stated in the opinion of Senator Paige (*Mercein v. People*, 25 Wendell, *supra*), such unhappy controversies as these may endure until the entire impoverishment, or the death of the parties, renders their farther continuance impracticable.   If a final adjudication upon a *habeas corpus* is not to be deemed *res adjudicata*, the consequences will be lamentable.   This favored writ will become an engine of oppression, instead of a writ of liberty."

The serious objection to the conclusiveness of a judgment on *habeas corpus* in such causes would be removed by a provision for review by appeal or writ of error.   It would seem that such provision has been made by statute in some of the states.   Church on

Habeas Corpus, sec. 388. But Mr. Church is mistaken in the statement that decisions in such cases may be reviewed by statutory authority in Missouri by appeal, and *Ferguson v. Ferguson, supra,* cited by him, is not authority for such statement. This much has been said in reference to the conclusiveness of the discharge of the infant from the custody of the petitioners on the first writ in deference to the wish of the parties to have the views of the court upon that subject expressed, but as both parties seem desirous of having the *status* of this infant definitely settled as far as may be by this court on the merits of the case, and with this view have taken testimony, bringing the *status,* of the relations of the parties *inter sese,* and towards the child, before this court up to the time of its submission, and, as this remedy, from its nature, must be ambulatory, to the extent that a judgment in any case can be conclusive only when the same state of facts are shown to exist, we pass to the consideration of the case on its merits.

The mother of the infant, Louise (Julia Marley), died in the city of Oswego, Kansas, on Monday, the tenth day of June, 1883, when the child was five weeks old. The petitioners and respondent were both living in that city at the time, and the kindest and most affectionate relations existed between both parties and their families. She died at the home of the respondent's father, with whom the respondent and his wife were living at the time, and where the petitioners were also in attendance upon her. The petitioner, Mrs. Weir, testifies that three days before she died, she told her that she wanted to have a talk with her husband, and that she said she wanted to tell him, among other things, that she wanted Mrs. Weir to raise the baby; that, just before she died, when the parties were by her bedside, she, Mrs. Weir, having kissed her daughter, her daughter said, "This means something," when Mrs.

Weir said to respondent: "'Yes, she wants me to ask you if I may raise the baby? You will; won't you?' He hesitated a moment and said, 'Yes.' My daughter then motioned for a kiss, and, when he bent over her to kiss her, she said, 'It is Ma's baby;' he said 'Yes, Ma's baby.' That was all that was said that related to the baby." The testimony of Dr. Weir and his daughter, Miss Ellen, as to what occurred at the bedside just before the death of Mrs. Marley, is to the same effect. Mr. and Mrs. Hobart testified that, on the Thursday after the death of Mrs. Marley, Mr. Hobart asked Mrs. Weir in the presence of Mr. Marley: "Is this Julia's baby?" And Mrs. Weir replied: "No, it is ours, Julia gave her to us to raise, and Mr. Marley consented," and Mr. Marley made no reply.

On the other side, the respondent denied that any such conversations took place, testified that Mrs. Weir appealed to her daughter to give her the child on the night of her death, but that her daughter made no response, nor did he. The testimony of the other witnesses, who were in attendance upon her that night, tended to support the testimony of the respondent, and the respondent introduced other evidence tending to prove that, in response to a request of Mrs. Weir, subsequently made to him, to give her the child, he gave a denial, and here ends the only material conflict in the testimony. The child was taken to the home of the petitioners, was tenderly cared for and nursed by its grandparents through the ills incident to childhood, with the consent of the father, and remained with them almost continuously until about the twenty-seventh of April, 1889. In the meantime, the petitioners had removed from Oswego to Springfield, Missouri, and the respondent had married again. At the date last aforesaid, Louise was taken to her father's home, at Oswego, remained a time, returned to Springfield, remained a short time at the home of her grandparents, returned

again to Oswego, remained with her father, at his home, until about the fourth of September, when she returned with him to the home of her grandparents. On the twenty-second of August, just before the last return, the respondent had written to Dr. Weir, signifying his desire that Louise should make her future home with him, at Oswego, and, during this last visit, this controversy, about the future home and custody of Louise, grew up and culminated in these proceedings by *habeas corpus*.

The petitioner, Dr. Weir, is a physician, aged about fifty years, in comfortable circumstances, with a large and increasing practice, a pleasant home, a refined and cultured family, consisting of his wife, aged about forty-five years, two daughters, aged respectively, about twenty-three and twenty years, and two sons, about nineteen and fifteen years, and the aged mother of Mrs. Weir, of about eighty years. The respondent is a banker, aged about thirty-six years, in comfortable circumstances, of exemplary character and habits, and bright prospects, has a pleasant home; his family consisting of his father, a retired banker, aged about sixty years, and his wife, aged about twenty-six years, to whom he has been married about two years and a half, and by whom he has no child; his wife is a refined, cultured and affectionate lady. The parties and their families, before this controversy, entertained for each other the kindest feelings, and have, at all times, treated each other with the greatest cordiality and respect, and since, with such consideration as speaks volumes in their favor. The glimpse which the evidence gives us into these two erstwhile and now, save for this unfortunate controversy, happy homes, leaves no doubt in our minds that Louise would find a congenial and happy home in either, to the members of each of which she seems warmly attached, and by whom the attachment is as warmly reciprocated.

In all civilized countries, in which the family is regarded as the unit of social organization, its minor members must and ought to be subject to the custody and control of those who are immediately responsible for their being, for the reason that by nature there has been implanted in the human heart those seeds of parental and filial affection that will assure to the infant care and protection in the years of its helplessness, to be returned to the parents again when they in their turn may need protection, in their years of helplessness and of their child's strength and maturity. The law, at the birth of an infant, imposes upon the parent the duty of such care and protection, to the performance of which the instincts of nature so readily prompts, and clothes him with the right of custody, that he may perform it effectually, upon the presumption that such custody, being in harmony with nature, is best for the interest, not only of the parent and child, but also of society; conceding, however, that the primary object is the interest of the child, the presumption of the law is that its interest *is to be in the custody of its parent.* The law has made provision, in two instances, whereby this presumption may be overcome; in the statutes providing for the adoption and apprenticing of children, when, *for their interest*, this right of custody is permitted to be transferred to another. In regard to all other contracts by parents, for the custody of their children, this presumption must obtain; and, while the parent may, by his inability or failure to discharge properly his duty towards his child, forfeit his right to its custody, because the interest of the child demands it, yet, upon the trial of an issue, involving such a forfeiture, he is entitled to the benefit of such presumption; and, unless the interest of the child does demand it, such forfeiture cannot take place. He cannot deprive himself of this right of custody, which is the concomitant of a personal trust imposed upon him by the law of nature, as well

as by positive law, and essential to the discharge of the duties of that trust, by contract *per se*, otherwise he might deprive his child and society of the benefits which the law contemplates will inure to each by the personal discharge of his parental duties.

An analysis of the many cases to which we have been cited by counsel serves only to confirm in our judgment the correctness of the ruling of this court in the case of *Berenice Scarritt*, 76 Mo. 565. That a father cannot by contract, other than such as are provided for by statute, confer upon another irrevocably and absolutely as against himself a right to the custody of his minor child; that notwithstanding any such contract, upon *habeas corpus* for the custody of such child, the custody will be awarded to the father, unless the welfare of the child demands that it should remain in, or be restored to, the custody of the person with whom it was placed by the father under such contract, or that some other disposition be made of it. Such a contract is not to be entirely ignored. It is to be considered, not for the purpose of fixing the rights of the parties, but for the purpose of shedding light upon their actual relations and feelings toward the infant and assisting the exercise of a wise discretion by the court, as to what disposition should be made of it for the promotion of its own welfare. What is for the best interest of the infant is the question upon which all the cases turn, at last, whatever may be said in the opinions about contracts, and the answer returned, is that the custody of the child is by law with the father, unless it appears by satisfactory evidence that the best interest of the child demands that he should be deprived of that custody, and upon him, who so avers, devolves the burden of proof. The presumptions are against it. *State v. Libby*, 44 N. H. 321; *Chapsky v. Wood*, 26 Kansas, 650; *U. S. v. Green*, 3 Mason, 482; Hurd on Habeas Corpus, sec. 537; *Jones v. Darnall*, 103 Ind. 569; *Brooke v. Logan*,

112 Ind. 183; *State ex rel. Sharp v. Banks*, 25 Ind. 495; *Armstrong v. Stone*, 9 Gratt. 102; *Johnson v. Terry*, 34 Conn. 259; *State ex rel. Paine v. Paine*, 4 Humphreys, 523; *Rust v. Vanvacter*, 9 West. Va. 600; *State v. Richardson*, 40 N. H. 272; *Mayne v. Baldwin*, 5 N. J. Eq. 454.

And no well-considered case will be found where the custody of a minor child was by *habeas corpus* taken from the father and given to another, upon the sole ground that the legal right of the father had passed to and vested in such other person by parol contract, and yet upon this ground alone, in the light of all the evidence, we are asked to take this child from its father and give it to the petitioners; for it is impossible to see from the evidence that the interests of the child will be better promoted by awarding its custody to the grandparents, than it would be, if such custody was awarded to the father. In such case the presumption of the law must obtain, that it is to the interest of the child to be in the custody of its father. The said Louise Marley will, therefore, be remanded to the custody of the respondent. All concur, except Judge SHERWOOD, who dissents. Judge BARCLAY concurs in the result.