*In re* GOLDINGER.

HABEAS CORPUS—CUSTODY OF MINOR—FITNESS OF PARENT.

> On certiorari to review *habeas corpus* proceedings by the father against the grandmother for the custody of a minor son, where the respondent failed to show that the father is not a fit person to have the care and custody of his son, the order of the trial judge awarding custody to the grandmother will be vacated, and an order entered awarding permanent custody of the child to the father.

Certiorari to Wayne; Mayne, J., presiding. Submitted June 26, 1919. (Docket No. 106.) Decided July 17, 1919.

*Habeas corpus* proceedings by George C. Goldinger against Emma Gignac for the custody of an infant. From an order awarding the infant to defendant, plaintiff brings certiorari. Reversed, and judgment entered for plaintiff.

*Frank C. Sibley,* for appellant.

*Daniel P. Cassidy,* for appellee.

KUHN, J. In this proceeding a review is sought by writ of certiorari of an order made and entered on February 21, 1919, awarding the custody of Robert G. Goldinger, born March 18, 1916, the minor child of the petitioner, George C. Goldinger, to Emma Gignac, the respondent. It appears that petitioner married the daughter of respondent October 8, 1914, and that they made their home with the respondent from the date of the marriage until the death of petitioner's wife, and thereafter petitioner with the child remained at the respondent's home for an additional six months. He thereupon married his present wife and removed from the respondent's home, leaving the child, however,

with the respondent. The child was nine days old at the time of his mother's death, and from that time the respondent has taken care of the child and it is undisputed that she has bestowed upon it all the tender care and affection of a mother. After the remarriage of the petitioner it appears that he called once or twice a month to see the child and later took it to his home for the period of a week or ten days. In March, 1918, it was brought to the attention of the respondent that the petitioner intended to take permanent possession of the child, which she refused to permit him to do, which resulted in *habeas corpus* proceedings being brought. This matter was brought on before the Hon. Frederick W. Mayne, acting as circuit judge for Wayne county, and several days were consumed in taking testimony. The court thereupon delivered an opinion, in which he indicated that the custody of the child should be divided between the parties. No formal order was entered upon the said opinion, and the court intimated that he would leave the order, in some particulars, largely to counsel. On January 19, 1919, the petitioner obtained possession of the child, being then about three years of age, and claims to have discovered that the child was being neglected by the respondent and that she was not giving it that proper care and attention which, in his opinion, it ought to have, because of the limited facilities that the respondent had, living in a small house, which was illy provided with sanitary facilities. He thereupon, through his counsel, advised respondent that he intended to keep possession of his child. On February 21st a formal order was presented to the court by counsel, giving the entire custody, possession, education and control of said child to the respondent until the child shall attain the age of 14 years, upon condition that the father may visit his son only once in every two weeks. At that time the

petitioner filed a written motion and petition to the court asking a denial of the proposed order, which motion was denied by the court, and the following order was thereupon duly made:

"This cause having come on to be heard upon petition for writ of *habeas corpus*, the writ issued thereon, and the return of the respondent; and the court having heard the testimony offered by the respective parties, and the argument of counsel thereon, and the said parties being again before the court on the 21st day of February, A. D. 1919, the petitioner being represented by his attorney, Frank C. Sibley, and the respondent being represented by her attorney, Daniel P. Cassidy, and it being admitted by the said counsel for said parties that the divided custody and possession of the child, Robert G. Goldinger, by the parties to this proceeding, as heretofore recommended by the court, has not proved satisfactory, and has not proved to be for the best interest and welfare of said child, Robert G. Goldinger, and it also being admitted by the said counsel for the said parties that the said petitioner recently obtained possession of said child, Robert G. Goldinger, and still has the possession of said child, Robert G. Goldinger, and that he refuses to deliver said child to the possession and custody of the respondent, therefore this court, by virtue of the authority in it vested, does order:

"*First:* That the custody, possession, education and control of said child, Robert G. Goldinger, is hereby placed in and awarded to Emma Gignac, the respondent, until said Robert G. Goldinger attains the age of fourteen (14) years, upon the condition only, that the said petitioner, George C. Goldinger, may visit the said child, Robert G. Goldinger, at the home of the respondent, every other Saturday and Sunday, or may on said days, take said child with him to his home, but not outside of the county of Wayne, and said petitioner shall return said child, Robert G. Goldinger, to the home of the respondent not later than 8:00 o'clock P. M. on the Sundays when said child shall be in his possession, pursuant to this order.

"*Second:* That said petitioner, George C. Goldinger, shall forthwith deliver to the respondent at her home

in the city of Detroit, the said child, Robert G. Goldinger.

"*Third:* This order is entered without prejudice to the right of petitioner for a modification thereof as to matters that may have arisen since the original hearing of this case."

Various reasons are alleged by counsel for petitioner and plaintiff in certiorari why the court was in error in overruling the motion made by petitioner's counsel, the principal reason relied upon being:

"That the court having found that the petitioner is a competent and qualified person and suitable to have the care and custody of the child, under said finding it was error, as a matter of law and equity, to deprive the petitioner of the possession and custody of said child."

At the time that the court heard the testimony and filed his opinion, the learned trial judge found:

"On the part of the petitioner, he is a young man at present enjoying a fairly good salary, honest and of good reputation, he is healthy and able to work and possessed of no bad habits. He has, however, not been above criticism in the past in this, that he has to a large extent neglected the child; he has not given it that affection one would expect of a parent; he has permitted the grandparents to do many things that he should have done. I attribute this more to the fact that he and the grandparents were on good terms, and he saw that the child was being attended to, the fact that it was free from danger and that he did not consider his own special duty in the matter. However, that should be charged against him at the present time.

"Now, the question presents itself, as I said, as to what the future of this child demands, and its future demands differ nothing from that of any other American child. I believe that every boy who has a father who is susceptible should be under the custody of their father, and should associate with him as much as possible. I have no sympathy with the idea that our boys should be under the direction and control of

women. In this case, his grandmother's home and his surroundings are ideal at present, there is no doubt about that, but there comes a time when he must go out and get in touch with the world and as time progresses, the ability of the grandparents to meet this situation decreases, and the ability of the father increases, so that in ten years from now the situation will be largely changed if this young man, the father, progresses as he is doing now. He has got beyond the age when his good habits are liable to change, and if he is industrious and regards the best interests of the child, his influence will be felt in the forming of the character of the child, assisting him to become to be a man, honest and upright.

"Under the circumstances, all the interests of this child demand that he have an opportunity to associate with his father in the future. It is necessary for the proper development of his character. As to the stepmother,—I am not much in sympathy in giving children to stepmothers. This woman has shown a good deal of common sense on the witness stand. She could not take care of the child at the present time as well as the grandmother, but she says he is my husband's child, and if the custody is awarded to my husband, I shall do my best to take care of that child and love him. She makes no extreme profession."

This court said, in the most recent case on this subject, *Martin* v. *Benzie Circuit Judge,* 200 Mich. 549, at page 552:

"The courts should, and have always had in mind, in the determination of the vexing questions arising concerning the custody of a child, the best interests of the child and also the natural and humane feelings and sentiments of the parents."

In the case of *In re Gould,* 174 Mich. 663, at page 670, the following general rule was stated:

"The power of parental control, though recognized as a natural right and protected when properly exercised, is by no means an inalienable one. When the 'right of custody' is involved between respective claimants for a child, the courts, though in the first

instance recognizing *prima facie* rights of relation-ship, in the final test are not strictly bound by de-mands founded upon purely technical claims or naked legal rights, but may and should, in making the award, be governed by the paramount consideration of what is really demanded by the best interests of the child. *Corrie* v. *Corrie,* 42 Mich. 509 (4 N. W. 213); *In re Heather Children,* 50 Mich. 261 (15 N. W. 487); *Chapsky* v. *Wood,* 26 Kan. 650 (40 Am. Rep. 321); *Richards* v. *Collins,* 45 N. J. Eq. 283 (17 Atl. 831, 14 Am. Dec. 726)."

We are unable to find, however, that this court has ever said, or interpreted the rule to mean, that a father would be deprived of the possession of his child where it clearly appears that he is a man of good habits, honest, and well able to provide for his child. The only charge that can be made against the petitioner in this case is that during the time immediately after the death of the mother of the child, he did not bestow upon it that affection that might be expected of a parent, but, as the learned trial judge found, this might be explained by the fact that he knew the grand-parents would do many things for it that he should have done and that he saw that the child was being at-tended to. However, he never relinquished the right of the custody of his child, and it was only a short period after his second marriage that he requested its possession. It may be true that the respondent is as much attached to the child as the parent and that she is as suitable to have its custody and as able to provide and care for it, but nevertheless, unless it clearly ap-pears that the parent is for some reason unfit to have its possession, the rule is well established in our law that the parent is entitled to the possession of his child against all others. The reason for this rule is very aptly stated by the court in *Weir* v. *Marley,* 99 Mo. 484 (12 S. W. 798), cited by counsel for petitioner in his brief, from which opinion the following is quoted:

"In all civilized countries, in which the family is regarded as the unit of social organization, its minor members must and ought to be subject to the custody and control of those who are immediately responsible for their being, for the reason that by nature there has been implanted in the human heart those seeds of parental and filial affection that will assure to the infant care and protection in the years of its helplessness, to be returned to the parents again when they in their turn may need protection, in their years of helplessness and of their child's strength and maturity. The law, at the birth of an infant, imposes upon the parents the duty of such care and protection, to the performance of which the instincts of nature so readily prompts, and clothes him with the right of custody, that he may perform it effectually, upon the presumption that such custody, being in harmony with nature, is best for the interest, not only of the parent and child, but also of society; conceding, however, that the primary object is the interest of the child, the presumption of the law is that its interest *is to be in the custody of its parent.* The law has made provision, in two instances, whereby this presumption may be overcome; in the statutes providing for the adoption and apprenticing of children, when, *for their interest,* this right of custody is permitted to be transferred to another. In regard to all other contracts by parents, for the custody of their children, this presumption must obtain; and, while the parent may, by his inability or failure to discharge properly his duty towards his child, forfeit his right to its custody, because the interest of the child demands it, yet, upon the trial of an issue, involving such a forfeiture, he is entitled to the benefit of such presumption; and, unless the interest of the child does demand it, such forfeiture cannot take place. He cannot deprive himself of this right of custody, which is the concomitant of a personal trust imposed upon him by the law of nature, as well as by positive law, and essential to the discharge of the duties of that trust, by contract *per se,* otherwise he might deprive his child and society of the benefits which the law contemplates will inure to each by the personal discharge of his parental duties."

The respondent having failed to show that the father, George C. Goldinger, is not a fit person to have the care and custody of his son, it follows that the order made by the learned trial judge must be vacated and an order entered awarding the permanent custody of his child to the petitioner. No costs.

BIRD, C. J., and OSTRANDER, MOORE, STEERE, BROOKE, FELLOWS, and STONE, JJ., concurred.