GREENE *v.* WALKER.

1. INFANTS—HABEAS CORPUS—RIGHT OF PARENTS TO CUSTODY OF CHILDREN—EVIDENCE—SUFFICIENCY.

In *habeas corpus* proceedings by a father to obtain the custody of his nine-year-old daughter, evidence that the daughter had been in the custody of her grandmother and aunt ever since the death of her mother when she was only 13 days old, that the father has never paid a cent toward her maintenance or support or shown any interest in her previous to the institution of these proceedings, and that she has a good home, *held*, to justify the conclusion of the circuit judge that her best interest requires that she remain where she is.

2. SAME—PARENTS ENTITLED TO CUSTODY OF CHILDREN EXCEPT WHERE FACTS JUSTIFY DENIAL.

In view of the statute (3 Comp. Laws 1915, § 13955) giving to parents, if competent and otherwise suitable, the right to the custody of their minor children, the courts should recognize said right of the parents except where the facts justify a denial of it; to hold that the welfare of the child is the paramount question would in effect nullify the statute. Per CLARK, C. J., and MCDONALD, BIRD, SHARPE, and STEERE, JJ.

Certiorari to Ionia; Hawley (Royal A.), J.   Submitted April 16, 1924.   (Docket No. 89.)   Decided July 24, 1924.

*Habeas corpus* proceedings by Otto F. Greene against Ernestine Walker to obtain the custody of an infant.   From an order denying the writ, plaintiff brings certiorari.   Affirmed.

*Griswold & Cook*, for appellant.

*Eldred & Gemuend* and *Floyd A. Winter*, for appellee.

MOORE, J.   The plaintiff is the father of a daughter who was 9 years old in January.   The child has lived with her grandmother and her Aunt Ernestine Walker since she was 13 days old.   The grandmother is dead.   The father sued out a writ of *habeas corpus* to obtain the custody of the child.   He seeks by certiorari to review the action of the circuit judge in denying him the custody of his daughter.

Section 13955, 3 Comp. Laws 1915, reads:

"The father of the minor, and in case of his decease, the mother, being respectively competent to transact their own business, and otherwise suitable, shall be entitled to the custody of the person of the minor and to the care of his education:  *Provided*, That if the judge of probate of the proper county shall in any case, after an examination into the facts, make an order declaring either or both of the parents incompetent or unsuitable to have the custody of the person or the care of the education of the minor, in such cases the guardian appointed by the probate judge shall have the custody of the person of the minor and the care of his or her education."

Counsel for the plaintiff insist that as their client has shown he is the father of the child, and is com-

petent to transact his own business, that as a matter of law he is entitled to the custody of the little girl.

The return of the trial judge to the writ of certiorari is in part as follows:

"STATE OF MICHIGAN—Eighth Judicial Circuit.

"Before the Honorable Royal A. Hawley, circuit judge, sitting in chambers at the city of Ionia, in said State.

"In the matter of the petition of Otto F. Greene for writ of *habeas corpus*.

"This case involves the custody of the infant child, Anna Katherine Greene, the daughter of said petitioner, who is her father and only surviving parent. The controlling facts in the case are either admitted or stand undisputed and may be stated as follows:

"The child was born on the 28th day of January, A. D. 1915, at the home of the parents in the city of Grand Rapids, in this State. The mother died on the 9th day of February, 1915, thirteen days after the birth of the child. The testimony shows that it was her wish that her sister, Mrs. Ernestine Walker, should have the custody of the child. After the death of the mother the child was immediately taken to the home of her maternal grandparents, Mr. and Mrs. Matlock, in the city of Greenville, Michigan, where the respondent and her husband, Mr. and Mrs. Walker were then also living. There they remained together in the Matlock home for a period of three months or thereabouts, when they all together removed to the Walker home which adjoined the Matlock home, and where they lived together for one year or thereabouts. During this time a considerable of the care of the child devolved upon the respondent. Since that time, with the exception of two years, the Matlocks and the Walkers lived upon adjoining lots and to quite an extent practically as one family. During that two-year period they lived near each other and the same condition of intimacy existed between the two families and during the entire time the child has been an inmate either in one home or the other up until the present time, and has been the object of the care, training and maintenance of both Mrs. Matlock and Mrs. Walker. * * *

"It is the wish of the petitioner that the custody of the child be given to him.      He was appointed guardian of the estate of his two minor children in January, 1916, and his letters of guardianship are now in full force and effect.      He has no home to which to take the child except the home of his parents, Mr. and Mrs. O. W. Greene in the city of Royal Oak, Michigan.      The inmates of that home are his father, who is in his 82d year, and in at least somewhat feeble health, his mother in her 71st year, who also is not in vigorous condition, and himself and his son 15 years of age.

"I have no question but what the Greene home is one of refinement, pervaded by a Christian atmosphere, and one in the confines of which a child would derive no harm.

"The home of the respondent is at least equal in all these requisites to the home which petitioner seeks to take his daughter.

"I realize how desirable it is that this child should come into more familiar contact and association with her brother and with her father, but I think that there are other considerations which are more vital to the child's welfare and more controlling in this case than either or any of these.

"I also realize that ordinarily the parent has and should have a superior right to the custody of his child and that his poverty or lack of financial means should not be given any great weight to deprive him of this natural right, but I also realize that the rule of superior right is not a hard and fast rule.      A child is not a chattel nor subject to ownership as such.

"The paramount question under the law in all cases of this character is the welfare of the child.      All other considerations must yield to this one.      The dying wish of the mother, the desire and purpose of the father, the otherwise superior right of either father or mother even the wish of the child herself, are and must not be entirely controlling.

"It appears in the case without question that the cost and expense and trouble of the care and nurture of his child from the date of its mother's death until the present time, has been borne by Mrs. Matlock and Mrs. Walker, and to a considerable extent by Mrs. Walker alone.

"Admittedly the father has never paid one cent for the maintenance of his daughter. Since March 31, 1915, he has never seen her, except on three or four different occasions, and then neither by nor through any initiative or effort of his own. He admits that the daughter, prior to the hearing of this case, was a stranger to him and that he would not have known her if he had met her on the street. On at least a majority of the occasions when he has seen her, it has been through the efforts of Mr. and Mrs. Matlock and upon one occasion, and as I understand it, the last occasion he ever saw her prior to the hearing, his attention was especially challenged to his daughter by Mr. Matlock, who asked him to come and see her as she was then on the street in an automobile. He did so, looked at her and turned away without saying a word either to her or to anyone else. Admittedly he had not seen her for six years prior to the time that this hearing in court was commenced. Under his own admission he gave her a Christmas present on her first and second Christmas anniversaries, but never since, except as he has done so through the instrumentality of his son. This absence of interest on the part of the father requires no characterization by the court.

"Some excuse is attempted to be made for it under the claim that the feelings between himself and the Matlock and Walker families were considerably strained, but I can conceive of no strained relations between families that would keep a loving father away from his daughter whenever opportunity was afforded to see her, or that would keep a father a stranger to his child during the first nine years of her lifetime.

"Mrs. Greene, the grandmother, asserted upon the witness stand that she would have known the child if she had seen her upon the street, and this is probably true. Aside from the three or four occasions above referred to, she has not seen her, except as she has seen her upon the street, and is practically an entire stranger to her granddaughter. At least the little girl stated to me that she would not have known her father or grandmother Greene up to the time of the hearing in court if she had met them at any place.

"The Walkers have become attached to the child to the same extent as if she were their own, and are very much interested in her present and future, as they have been during the years of her past. They are willing to afford her the opportunities of an education in the Greenville schools, which have a high standing among the schools of the State, and also to give her a higher education if desired. They have one child, a boy 11 or 12 years of age, and the two of them have been brought up together. They are also possessed of means and income sufficient to warrant the hopes and expectations of this child. Mr. and Mrs. Walker are people of high character and standing in their community. They are both comparatively young in years and can exercise the right kind of influence and afford the proper discipline.

"The respondent, Mrs. Walker, in my judgment, will carefully see to it that this child is given at the time of life when she most needs it, the care, training and nursing which can only be given by an intelligent mother solicitous for the welfare of her child.

"It is also possible that the grandmother, Mrs. Greene, would do likewise to the best of her ability; but even so, it is uncertain at her time in life and in her condition of health how long this would last, and how soon again it would be necessary that the child be shifted to another home or be an object of indifference and neglect.

"In my judgment the best interest of the child imperatively requires that she remain where she is and accordingly the writ of *habeas corpus* is denied.

             "ROYAL A. HAWLEY,
                   "Circuit Judge."

The court made an order in accordance with the opinion.

The question of who is entitled to the custody of minor children has been before this court many times. Some of the cases are: *In re Mason,* 8 Mich. 70; *Taff* v. *Hosmer,* 14 Mich. 249, 255; *Corrie* v. *Corrie,* 42 Mich. 509; *Carpenter* v. *Carpenter,* 149 Mich. 138; *In re Sneden,* 105 Mich. 61; *In re Knott,* 162 Mich. 10; *In re Mould,* 162 Mich. 1; *Weiss* v. *Weiss,* 174 Mich.

431; *In re Gould*, 174 Mich. 663; *Martin* v. *Benzie Circuit Judge*, 200 Mich. 549; *In re Goldinger*, 207 Mich. 99; *In re Adams*, 214 Mich. 199.

In *Corrie* v. *Corrie, supra*, Justice GRAVES, speaking for the court, said in part:

"In contests of this kind the opinion is now nearly universal that neither of the parties has any rights that can be allowed to seriously militate against the welfare of the child. The paramount consideration is what is really demanded by its best interests."

See *Carpenter* v. *Carpenter, supra; In re Solosth*, 157 Mich. 224.

In *Re Knott, supra*, which was a controversy between the husband and wife as to who was entitled to an infant, Justice OSTRANDER, speaking for the court, said in part, after citing the provisions of the statute:

"There is nothing in either provision which interferes with the right of a court of competent jurisdiction, upon investigation and upon consideration of the best interests of a minor child, to commit said child to the custody of either the father, the mother or of some other suitable person.   *   *   *

"It is said that the petition does not allege that the respondent is unfit to have the custody of the child or that he was not caring for him in a proper and reasonable manner, or that the petitioner is a fit person to have his care and custody or that she is in condition to care for him properly, and that there is no statement in the petition from which it may be inferred that the child would be benefited by the transfer from the custody of respondent to that of the petitioner; that unless such a showing is made on the hearing, the court would be obliged to dismiss the writ because it could not properly make an order giving the child into the custody of the mother.

"The argument assumes that the child is in the custody of the father, and it must rest upon some notion of a legal right of one parent as against the other, in the absence of judicial determination, to dispose of the child, an argument already answered."

In *Weiss* v. *Weiss, supra,* the contest was between the parents as to who should have the minor children, Justice STEERE, speaking for the court, said in part:

"While the wishes and affections of the parents for the child are not to be ignored, they are a secondary consideration. The primary consideration is the welfare and happiness of the child, from the standpoint of education, moral and religious training, good influences, care, kind treatment, pleasant environments and future prospects."

In *Re Gould, supra,* Chief Justice STEERE, speaking for the court, said:

"*Prima facie* the father was, and by the adoption to which he consented petitioner is, entitled to the custody of the child. The law recognizes the rights of the father because it recognizes the natural duties and obligations of the father. The father's right to and authority over his child are secure and inviolable so long as he properly discharges the correlative duties.

"But the absolute power of the father over his infant children, to treat them as property and dispose of them as he sees fit because they are his, which was once recognized under the Roman law of *patria potestas* and in the codes of early nations, no longer obtains. Paternal authority is subordinate to the supreme power of the State. Every child born in the United States has, from the time it comes into existence, a birthright of citizenship which vests it with rights and privileges, entitling it to governmental protection—

" 'And such government is obligated by its duty of protection, to consult the welfare, comfort and interests of such child in regulating its custody during the period of its minority.' *Mercein* v. *People,* 25 Wend. (N. Y.) 64 (35 Am. Dec. 653).

"The power of parental control, though recognized as a natural right and protected when properly exercised, is by no means an inalienable one. When the 'right of custody' is involved between respective claimants for a child, the courts, though in the first instance

recognizing *prima facie* rights of relationship, in the final test are not strictly bound by demands founded upon purely technical claims or naked legal rights, but may and should, in making the award, be governed by the paramount consideration of what is really demanded by the best interests of the child. *Corrie v. Corrie, supra; In re Heather Children,* 50 Mich. 261; *Chapsky v. Wood,* 26 Kan. 650 (40 Am. Rep. 321); *Richards v. Collins,* 45 N. J. Eq. 283 (17 Atl. 831, 14 Am. Dec. 726).

"It is a well-settled rule that the personal attachments and wishes of children, when of sufficient capacity to form them, are important elements to consider where a parent seeks to reclaim a child voluntarily allowed to live for any considerable time in the family of others, and thus form home ties and an affection for those who have cared for it there. *Richards v. Collins, supra.* * * *

"The ability and fitness of the respective contending parties is not seriously questioned in the record. We may assume petitioner and her husband give every assurance that the child would be properly cared for in a suitable home if they were given his custody. It is conclusively shown that the grandparents have done so and are doing so. In their case it does not rest in probabilities. While with them, the boy during the earlier years of his tender childhood has lacked nothing which a child should have. He has been patiently and affectionately nurtured and tended and all his wants provided for. When he was small and helpless and the burden of his rearing heaviest, they faithfully and freely discharged every parental duty towards him. With the passing years of patient watching over him as the little child of their dead daughter, he grew in their affections and became to them as their own child.

"Not only do the interest and affection they have shown, and the care and support they have given him, entitle them to some consideration as against a prospect, but they give assurances for the future. What they have done tends to show what they are willing to do and will do. Their pecuniary condition is ample to enable them to provide for his maintenance and education during minority and much more if so inclined. There is nothing to indicate any financial

advantage to him in a change of custody, or that he will in any way be better educated, trained or treated, or his welfare in any particular be promoted if he is taken from his present home and compelled to go with petitioner.    He is well provided for now, and in the language of Justice Brewer in *Chapsky* v. *Wood, supra:*

" ' "Let well enough alone" is an axiom founded on abundant experience.'

"The case of *Pool* v. *Gott*, 14 Law Reporter (Mass.), 269,   *   *   *   is instructive, well in point here, and involves a very similar issue.   *   *   *   The opinion in that case delivered by Chief Justice Shaw, radiates the prevalent tone of our best authorities on the interesting and delicate subject of the right of custody of infants as between near relatives.    On a review of the whole case from every angle, it was held that the child should remain in the custody of its grandparents, to whom it was devotedly attached and with whom it preferred to live; the leading principle being that, when the right of the parent is not clear and imperative, the best interests and happiness of the child must always control the decision of the court."

In *Martin* v. *Benzie Circuit Judge*, 200 Mich. 549, Justice KUHN, speaking for the court, said in part:

"The superior right of the parent to the child should only be enforced when it accords with the best interests of the child.    As was said by Chief Justice STEERE in the case of *In re Gould*, 174 Mich. 673:

" 'The leading principle being that, when the right of the parent is not clear and imperative, the best interests and happiness of the child must always control the decision of the court.' "

We have examined the cases cited by counsel of *In re Goldinger*, 207 Mich. 99; *In re Adams*, 214 Mich. 199, and think a reading of the opinions therein will show they are clearly distinguishable from the instant case.

The return of the circuit judge shows such a state

of facts as to satisfy us that his order ought not to be disturbed.

The order is affirmed, with costs.

CLARK, C. J., and McDONALD, BIRD, SHARPE, STEERE, FELLOWS, and WIEST, JJ., concurred.

SHARPE, J. (*concurring*).    I concur in the conclusion reached by Mr. Justice MOORE.    In view of the opinion handed down therewith in *Partch* v. *Baird, ante,* 660, in which I also concurred, I feel impelled to express my views on the general subject involved in both these cases.

Under the statute (3 Comp. Laws 1915, § 13955),—

"The father of the minor, and in case of his decease, the mother, being respectively competent to transact their own business, and otherwise suitable, shall be entitled to the custody of the person of the minor and to the care of his education," etc.

The trial court, in his return to the writ, quoted by Mr. Justice MOORE, said:

"The paramount question under the law in all cases of this character is the welfare of the child.    All other considerations must yield to this one."

The application of this rule, as thus broadly stated, cannot but nullify the statute.    If a father be a laboring man, it might well be claimed that "the welfare of the child," his "best interests," requires that he should be left in the custody of grandparents, in whose care he had been temporarily placed by the father on the death of the mother, if they be wealthy, and able and willing to give him the benefit of a college education, and surround him with more pleasant environment.    But, if the father be honest, moral, affectionate to his children, and his home be surrounded with good influences, and it is apparent that the child will receive kind treatment in it, in my opinion he is entitled to its custody.    I think this court has al-

ways recognized the *prima facie* right of the parent, and has never decided against such right, except in cases, like the one under consideration, where the facts justified a denial of it.    The rule applied by the trial court was first stated in *Corrie* v. *Corrie*, 42 Mich. 509.    An extract from that opinion is quoted by Mr. Justice MOORE.    In that case, the contest was between the father and the mother, as it was also in *Carpenter* v. *Carpenter*, 149 Mich. 138; *In re Knott*, 162 Mich. 10; *Weiss* v. *Weiss*, 174 Mich. 431.

In *Re Goldinger*, 207 Mich. 99, 104, wherein a father sought to obtain the custody of his child from the grandparents, after a consideration of the authorities, Mr. Justice KUHN, speaking for the court, said:

"We are unable to find, however, that this court has ever said, or interpreted the rule to mean, that a father would be deprived of the possession of his child where it clearly appears that he is a man of good habits, honest, and well able to provide for his child."

This holding is followed by a quotation from *Weir* v. *Marley*, 99 Mo. 484 (12 S. W. 798), in which the question is very ably discussed.

I find nothing in the opinion written by the same Justice in *Martin* v. *Benzie Circuit Judge*, 200 Mich. 549, to indicate that he had reached a different conclusion.    The latest utterance of this court is found in *Re Adams*, 214 Mich. 199, wherein Chief Justice STEERE said:

"The law makes him (the father) her guardian by nature and for nurture, *prima facie* entitled to her care and custody.    Bearing in mind also the child's best interests, the courts will primarily 'feel bound to restore the custody where the law places it, with the father, unless in a clear and strong case of unfitness on his part to have such custody.'    *Commonwealth* v. *Briggs*, 16 Pick. (Mass.) 203."

I have not overlooked the case of *In re Gould*, 174 Mich. 663.    The contest there was between an aunt

and grandparents. The opinion of Chief Justice Shaw in *Pool* v. *Gott*, 14 Law Reporter, 269, is referred to at some length. The holding in that case is thus stated at page 673:

"On a review of the whole case from every angle, it was held that the child should remain in the custody of its grandparents, to whom it was devotedly attached and with whom it preferred to live; the leading principle being that, *when the right of the parent is not clear and imperative, the best interests and happiness of the child must always control the decision of the court.*"

The question of the father's right under the statute, into which so many considerations enter, is always one of fact. I concur with Mr. Justice MOORE in affirming the conclusion reached in this case by the trial judge.

CLARK, C. J., and McDONALD, BIRD, and STEERE, JJ., concurred with SHARPE, J.