## E. W. PLAHN v. J. H. DRIBRED ET AL.

Decided October 19, 1904.

**1.—Minor—Custody—Rights of Parent.**

In a contest between a father and other relatives over the custody of his child, the controlling consideration is the interest of the minor and the custody by which this will be best subserved.

**2.—Same—Fact Case.**

Findings of fact held to sustain the judgment of the court awarding the custody of a girl of eight years to its maternal grandparents, to whom the father, now seeking to regain control, had surrendered her on the death of her mother.

Appeal from the District Court of Brown. Tried below before Hon. John W. Goodwin.

*G. N. Harrison,* for appellant.

*Jenkins & McCartney,* for appellee.

EIDSON, ASSOCIATE JUSTICE.—We adopt the statement of the nature and result of suit contained in appellant's brief, which is as follows:

"This was a proceeding by habeas corpus, instituted by appellant to recover the custody of Clara Essie Plahn (hereinafter called Essie), appellant's child, a girl about 8 years of age, and resulted in a judgment in favor of appellees denying appellant's right, and awarding the custody of said child to appellees, her maternal grandparents. The writ was granted in vacation and hearing set for October 30, 1903, but the case was not tried until January 25, 1904, in term time. The trial court filed findings of fact and conclusions of law January 30, 1904. Appellant excepted to said findings and conclusions and the judgment entered thereon, and gave notice of appeal to this court on January 30, 1904, and had such exceptions and notice entered of record. Counsel having failed to agree, the court prepared and filed a statement of facts February 15, 1904. Appellant filed appeal bond February 19, 1904; assignment of errors April 11, 1904; and has brought the record to this court for review.

"Appellant alleged that he was the father of the child; that at the death of its mother it was only 5½ years of age, and on account of its tender years and his inability to properly care for it, passed it into the custody of appellees; that he is now married and has a good wife, a home, and is able to and will properly raise, care for and educate his child, if the custody is awarded to him, etc.

"Appellees answered, alleging among other things a written contract between them and appellant giving them the custody of Essie; that appellant was an unfit person to have the custody and raising of Essie, because his reputation for honesty and truth and veracity in the neighborhood where he lived was bad, etc.

"Appellant replied by general and specific exceptions, general denial,

and pleaded that the contract was procured by fraud, and had been breached by appellees, and was void on grounds of public policy, etc. All of appellant's exceptions but the one contained in paragraph (3) of his second supplemental petition were overruled, to which he excepted."

The court below filed findings of fact and conclusions of law, which are as follows:

"1. That relator is the father of Essie Plahn, the mother of Essie having died on or about the 20th day of May, 1901, Essie being the only fruit of said marriage, and at that time about 5½ years old, and a female.

"2. That respondents are the maternal grandparents of Essie Plahn.

"3. That on her deathbed the mother of Essie Plahn requested of relator and he agreed to deliver Essie to her maternal grandparents to be by them reared, and pursuant to said agreement, relator did at the grave of the mother deliver Essie to said grandparents, and shortly after made and entered into the following agreement with them relative to said child, to wit:

" 'The State of Texas, Brown County. Know all men by these presents, that whereas, my wife, Jessie E. Plahn, is now deceased, leaving surviving her an infant daughter, to wit, Clara Essie Plahn, aged five years; and whereas I, E. W. Plahn, of Mills County, Texas, surviving husband of said Jessie Plahn, deceased, and father of said Clara Essie, deem it to the best interest of said Clara Essie that she should be raised by her grandfather and grandmother, to wit, J. H. and M. J. Dribred, of Mills County, Texas, the father and mother of said Jessie Plahn, deceased; and whereas, the said J. H. and M. J. Dribred are willing to assume the care, custody and support of said Clara E. Plahn during her minority; Now, therefore, I, the said E. W. Plahn, having in consideration her welfare and best interest, and in consideration of the care and trouble and expense to be incurred by the said J. H. Dribred and M. J. Dribred in the premises, do hereby relinquish to the said J. H. and M. J. Dribred, and to the survivor of them, all of my right of the care, custody and control of said Clara E. Plahn during her minority, and do hereby appoint the said J. H. and J. M. Dribred and the survivor of them the guardian of the person of said Clara Essie Plahn during her minority, with all the right, authority and control that I have, as the father of said Clara E. Plahn; to have the care, custody, management and control of the said Clara E. Plahn during her minority, as fully as the same is invested in me by law as her father. It is expressly understood that the said J. H. and M. J. Dribred are not to take any other child to raise unless an emergency shall arise, rendering it necessary for them to do so.

" 'Witness my hand this 27th day of May, 1901. (Signed) E. W. Plahn.'

"The above was duly acknowledged before E. W. Henley, a notary public of Brown County, by said E. W. Plahn, May 27, 1901.

"That at the time said agreement was made it was the contemplation of the contracting parties that relator would visit Essie and have her visit him.

"4. That at the time the aforesaid agreement was made and entered into respondents had in their charge and had agreed to rear, in fact had adopted another grandchild, which they, in consideration of getting Essie, agreed to surrender to its parents and which they did surrender to its parents shortly after taking charge of Essie.

"5. That at the time respondents took charge of Essie she was about 5½ years of age, and that they have since had charge of her, and that they are very much attached to the child and the child to them. That they have no children living with them, their children all being of age and living to themselves.

"6. That at the time respondents took Essie they lived on their farm, some twenty miles from Brownwood, and for the purpose of educating said child and giving it better advantages in other respects, they rented their farm and moved to the city of Brownwood, where they bought property and now reside. That since locating in Brownwood Essie had been in school, and has had church and Sunday school advantages and social and intellectual surroundings and atmosphere, such as she could not have had in the country with either relator or respondents.

"7. That Essie prefers to remain with her grandparents and does not wish to return to her father, and that her grandparents desire to keep her.

"8. That Essie was the only child of her parents and was tenderly cared for by her mother, and since her death has received the most loving care and attention from her grandparents, in whose charge she has been, and therefore now requires such attention and care, and will require such for several years, and until old enough to somewhat think and act for herself."

"9. That respondents own 620 acres of land, upon which there is a small farm and some pecan trees, worth $4000; that the land rents for $250 per annum, and the pecan trees produce a revenue of from $20 to $50 per annum, owing to the crop of nuts produced; that they own two dwelling houses in the city of Brownwood, worth $1300, one of which they occupy and the other they rent, receiving $8 per month therefor; that their taxes are about $20 per annum on all their property, the above being all their estate except their household furniture.

"I find that the income of respondents is sufficient to maintain them and Essie in reasonably comfortable manner, by proper economy, and that respondents are economical people.

"That respondents have no income, except as above, and are engaged in no business. That J. H. Dribred is 64 years of age and his wife is 60 years of age, and both of them in reasonably good health for their age.

"10. I find that relator, a little over four months after the death of the mother of Essie, married again, and that by his present wife he

has one child, a girl about 18 months of age; that at the time of this marriage he had known the woman he married one month, and she at that time knew relator was indicted for theft of sheep, but did not believe him guilty. That relator was, upon trial of said charge upon the merits, promptly acquitted by a jury.

"11. That relator's second wife is a woman of kind, friendly disposition, fond of children and a fairly good housekeeper. That she was reared without a mother and expresses her desire to have Essie live with her and to have the care of her, and to have her reared with her half sister, so that they will know and love each other as sisters. That she is used to economy and frugal by reason thereof.

"12. That relator owns a tract of 700 acres of land, 100 acres of which is in cultivation. That upon this tract he resides and has a good, substantial residence of four rooms; a good barn and other conveniences for farm life, and all better than the average farmer of this section of country, and that he lives as well as the usual run of farmers in this section, and provides as well for his family. That this property is worth $6000, and is incumbered for $1600 not yet due, drawing 8 per cent interest; that he has about $2000 worth of stock and personal property; that he owes miscellaneous debts to the amount of $2000, and which draw interest at the rate of 8 per cent per annum. That he owns a half interest in about 1400 acres of land, 400 of which is in cultivation, which cost $14,000. That $1000 of the purchase money on said land has been paid, and the balance is due and payable as follows: $3000 about one year from date of this trial; $5000 due five years, and $5000 due ten years from last named date, and all drawing 8 per cent interest from date of purchase, and all secured by a vendor's lien on the land.

"That he and the co-owner of said tract are preparing to irrigate the 400-acre farm from the Colorado River by pumping the water, and to that end have very recently purchased and placed on the land the necessary machinery, and are preparing to, but so far have not irrigated the land, and to what extent, if at all, the attempt will succeed is not known. That said 1400 acres of land is worth $15 per acre.

"13. I find that the relator resides on the Colorado River, in San Saba County, Texas, about twenty miles from Brownwood; that he resides in a sparsely settled country, the nearest school being four or five miles from his residence, and the nearest church being about the same distance. That relator has a married brother living near Indian Creek, a country postoffice, and there is a public school and a church, said postoffice being only a few miles from relator's residence.

"14. I find that relator is an industrious, energetic young man, disposed to speculate. That he is a farmer, and will naturally have to depend upon farming for a living and to meet his obligations, and that for the next five or six years he will, owing to his obligations and the interest he will have to meet, have to give his exclusive attention to business, and that he can not reasonably hope to have either spare cash or time, and that he will not in all probability be able, if so disposed, to

send Essie off to school or to give her advantages equal to those she now enjoys with her grandparents.

"15. I find that relator is not by nature an affectionate man, and could not and would not bestow upon Essie that love and attention to which she has all her life been accustomed; that relator's wife is a stranger to Essie, they having only the most casual acquaintance, and that the wife of relator being a young woman with only one child, would not and could not take the place of mother to Essie as her grandmother does.

"16. I find that relator's general reputation for truth and veracity in the neighborhood where he resides is bad. That this reputation is largely, if not entirely, due and owing to his failure, at a time when financially embarrassed, to keep his word with reference to paying his creditors, this being about and prior to the time Essie's mother died.

"17. That relator's general reputation for honesty in the community where he lives is bad.

"18. That a short time after the death of Essie's mother, the respondent, J. H. Dribred, who theretofore had been on the appearance bond of relator, without notice to him gave him up, he at once giving another bond, and that respondent, who was surety for relator on two notes, also notified the holders of said notes that he wished them to collect the notes by suit or otherwise when due. That relator was at this time financially pressed. That since the above incident the relations between relator and respondents have been strained, and that the feeling between them is not kind, but the reverse.

"19. That respondents, since getting Essie, have never objected to relator calling to see her, but have objected to him taking her home with him, or from their possession and custody, because they were afraid he would keep her.

"20. I find that both relator and his wife are members of the church and attend church. That he is intelligent and of good appearance and bearing.

"21. That respondents have not legally adopted Essie.

"22. I find that relator desires the custody of the child and believes that her affection for him is being alienated, but I find that this belief grows out of the feeling existing between relator and respondents, and is not based on anything done or said by respondents to alienate the child's affections, they having neither done or said anything to cause the child to lose respect for her father or to lessen her affection for him.

"23. I find that respondents did not advise relator of their intention to remove to Brownwood with the child, or their purpose in making the change.

"24. I find that a majority of the character witnesses against relator are his neighbors, and live in San Saba County, just over the river from Brown County, Texas, and voluntarily came to court to testify.

"From the foregoing conclusions of fact I conclude that, notwithstanding the legal rights of relator to his child, the welfare of the child

is and should be superior to his legal right, and that its welfare and happiness will be better guarded and guaranteed, for the present at least (any change in status of parties being a ground for reopening the question), by leaving it in the custody of respondents, and it is adjudged accordingly."

We find that there is evidence in the record to support the findings of fact of the court below, and hold that it did not err in its conclusions of law, based upon such facts.

Appellant's twelfth assignment of error complains of the action of the court in overruling his special exception to appellees' answer filed in the case. We are of opinion that in this character of case the answer of appellees was sufficient and not subject to appellant's exception. Corrie v. Corrie, 4 N. W. Rep., 213; Richards v. Collins, 17 Atl. Rep., 831.

It seems that the authorities of this State and other States are practically uniform in holding that in a contest for the custody of a minor, that person is entitled to such custody in whose custody the interest and welfare of the child would be best promoted. In other words, the interest of the child is the paramount consideration in determining who is best entitled to its custody. Legate v. Legate, 87 Texas, 248; State v. Deaton, 93 Texas, 243; Weir v. Marley, 99 Mo., 484. The court below concluded that the interest and welfare of the minor would be best subserved by such minor remaining in the custody of respondents (appellees), and we are of opinion that there was no error in such conclusion.

Without discussing appellant's various assignments of error in detail, we are of opinion none of them is well taken. There being no error pointed out in the record, the judgment of the court below is affirmed.

*Affirmed.*