DAILEY *v.* DAILEY.

DIVORCE—INFANT—CUSTODY—CRUELTY.
> Evidence examined and *held* not to show that a child, whose
> control was given to the husband in divorce proceedings on
> the ground that the wife was unfitted to have its custody,
> had been cruelly treated or that the wife who had since re-
> married had become sufficiently well fitted to have it, or
> that its interest required the modification of the decree.

Appeal from Kalamazoo; Knappen, J.   Submitted
February 20, 1911.   (Docket No. 30.)   Decided June 2,
1911.   Rehearing denied September 29, 1911.

Bill by Fred Dailey against Minnie Dailey for divorce.
After a decree for complainant, to whom the custody of
the children was awarded, defendant presented a petition
to have the order so modified as to give her the custody
of one of them.   From an order granting the prayer of
the petitioner, complainant appeals.   Reversed.

*Jackson & Fitzgerald,* for complainant.

*Boudeman, Adams & Weston,* for defendant.

BIRD, J.   This is an application by defendant to modify
the decree, heretofore rendered in this cause, granting
complainant a divorce and the custody of the children.
In her petition, the defendant asks for the custody of the
youngest child, Garnett.   The trial court granted the
prayer of the petition, and the complainant appeals there-
from to this court.

The parties were married in December, 1902, and
divorced upon the application of complainant in July,
1907, and the custody of the two children was given to
him.   The children were cared for by his mother and a
married sister until his remarriage in December, 1908,

since which time Garnett, who is now past six, has been living with him. The complainant has been for several years and is now engaged in the business of selling nursery stock for a Kalamazoo company, and when this petition was filed he was living in that city. The changed conditions chiefly relied upon for a modification of the decree are:

*First.* That complainant is remarried, and has taken the child from his mother's home into his own, where she is abused and ill-treated by her stepmother.

*Second.* That defendant is remarried, and has a good home with her parents, where she can care for the child with the consent of her husband.

1. The charge that the child had been abused and ill-treated by the stepmother was sought to be established at the hearing mainly by the testimony of two women with whom complainant and his wife had roomed for short periods. Their testimony was to the effect that, while complainant was rooming with them, the stepmother whipped and slapped the child frequently and severely, and that the stepmother manifested no affection for the child. There was much testimony bearing on the treatment of the child given at the hearing by neighbors of complainant, and by people with whom he had roomed or boarded since taking Garnett into his family, and the great weight of this testimony is to the effect that the child was well treated and cared for by her parents, and many manifestations of affection between the stepmother and the child were testified to by these witnesses. Several of these witnesses testified that the child was hard to control, and that they had seen the stepmother whip her, but that it was usually done with a switch cut from the trees or bushes, and was neither severe nor cruel, nor of a character to be injurious to the child. Soon after the alleged abuse at the rooming houses took place, an agent of the Humane Society made an investigation of the case, but found no marks of violence on the child's body. He gave it as his opinion that the child

was being well treated and cared for by its parents. After an investigation by one of the detectives of the city of Kalamazoo, he came to the same conclusion. This testimony leads us to the belief that the severity of the punishments was greatly exaggerated in the minds of the landladies. Had it not been, these investigations made so soon after would have disclosed some marks of violence on the child's body. We are of the opinion that the charge that the child was abused and ill-treated by the stepmother is not sustained by the testimony.

2. We are convinced from a reading of the record that the defendant, prior to her second marriage, was morally unfit to have the care and custody of her child. If any reliance is to be placed upon the testimony, she had very little affection for the child, and up to the time it was taken away from her she gave it rather indifferent attention. Most of the care and attention it received was bestowed upon it by her mother, with whom she lived. But it is said she is now remarried and has a good home with her parents, and that her husband is willing to take the child and support it. This argument would have great force with us, and doubtless incline us to affirm the order of the trial court, were it not for the fact that since the child was taken away from her she has seen it but once, and then only at the urgent request of another. She has made no other attempt to see her baby, and has manifested no interest in it by sending it playthings or sweetmeats.

This conduct on her part is so unlike the normal affection of a mother for her offspring that we are not persuaded that the change which has come into her life since her remarriage would justify a transfer of the child to her. The testimony further shows that the complainant is better able to care for and support the child than when the decree was granted. While it is generally true that a natural mother will do more for a child than a stepmother, that rule seems to be more often true where the stepmother has children of her own. In this case she has none. The testimony shows she has affection for the

child. Little complaint is made that the complainant has not done his duty toward the child, and we are not impressed from a study of the record that it will be for the best interest of the child to transfer it to its real mother.

The order of the trial court will be set aside, and another entered in accordance herewith.

HOOKER, MOORE, MCALVAY, and STONE, JJ., concurred.