## WEISS v. WEISS.

DIVORCE—PARENT AND CHILD—CUSTODY OF MINORS.

No absolute right to the custody of a child under 12 years of age is vested in the mother by 3 Comp. Laws, § 8689, 4 How. Stat. (2d Ed.) § 11537, even though the court finds that she is a suitable person to have charge of the child: the court in divorce proceedings has authority to make such disposition of minor children as it may deem for their best interests. The statute is intended to provide a general rule or guide for courts when there is a doubt which parent is best fitted for the control of young children, and under it the mother is *prima facie* entitled to have the charge thereof. BROOKE, McALVAY, and KUHN, JJ., dissenting.

Appeal from Bay; Collins, J. Submitted January 7, 1913. (Docket No. 6.) Decided March 21, 1913.

Bill by Leonard Weiss against Alma Weiss for divorce. From a decree making provision as to the custody of the children, both parties appeal. Affirmed.

*Coumans & Gaffney*, for complainant.

*Stoddard & McMillan*, for defendant.

STEERE, C. J.   The only proposition in this suit wherein the parties litigant are in accord is their desire to be divorced.   Complainant in his bill and defendant in her cross-bill each ask and urge that relief, but each imputes their admitted wreck on the sea of matrimony to the malfeasance of the other.   The most strenuous efforts of each, as indicated by their evidence, are devoted to rescuing from the wreck what salvage is possible, in the shape of reputation, property, and the surviving children born of their marriage.   In their respective pleadings each charges the other with extreme cruelty and other forms of gross misconduct inimical to domestic harmony, which necessarily render a continuation of their relations as husband and wife intolerable and impossible.   Each particularly contends for the care and custody of their two sons, aged, respectively, $2\frac{1}{4}$ years and 1 year.   The pleadings having been perfected and issue joined in this suit, it was duly brought on to be heard, on pleadings and proofs taken in open court, before the Bay county circuit court in chancery on March 7, 1912, and was apparently concluded the following day.

On April 12, 1912, an opinion was rendered by the trial judge in which neither was held blameless; but it was found that sufficient facts alleged in defendant's cross-bill had been established to entitle her to a divorce on the ground of cruelty, and a decree accordingly was authorized giving her the custody of the two children until the elder should arrive at the age of five years, when the complainant should have care and control of him; defendant thereafter to retain the younger as before, complainant to pay the actual disbursements of the suit, and their former home valued at between $3,000 and $4,000, title to which they held as tenants by entireties, to be divided.   Following this opinion, and before any decree was settled, de-

fendant made a change of solicitors, and proceedings were had resulting in the case being opened, and the testimony of 36 witnesses was heard relating mainly to the fitness of the respective parties to have the care and custody of their children, developing a bitter contention of broad range, involving the antecedents and parents of each. Subsequently an opinion was filed by the court adhering in chief essentials to his former decision, and on July 31, 1912, a decree was signed along the lines already stated, granting defendant a divorce on her cross-bill, giving her both children until August 1, 1914, when the oldest boy, Walter, who would then be five years of age, should be given into the custody and control of complainant, who, in addition to paying up certain back alimony and actual disbursements of the suit, was to pay complainant $13 per month until said August 1, 1914, dividing the real estate as heretofore stated; subsequent disposition of the children being also held subject to the further order of the court, with leave to defendant to make application for further allowance should certain contingencies arise. From this decree she has appealed, because, as stated in the brief of her counsel—

"She is not satisfied with the provision therein giving the care, custody, control, and education of Walter Weiss, the minor child of said parties, to the complainant after he becomes five years of age. She also asks that the award of property and alimony to herself be fixed at such an amount as, in the opinion of the court, shall be just to her, and in accordance with the modification of the decree in the particular of which she complains."

It appears from the record of this case that complainant was 23 years of age when they were married and defendant 20. They are German Americans, raised in the township of Frankenlust, Bay county, where the parents of each settled in an early day. They both now make their respective homes with their parents, in said township, who own farms and are substantial, prosperous, and respectable members of the German settlement located

there. These young people appear to have been well brought up in good homes, by thrifty, industrious, and moral, Christian parents, and bore good reputations in the communities where they were raised. They, with their parents, were members and attendants of the churches near their homes. Complainant was well educated, had been away to college, and taught in the public schools of the county. When married he was employed in a hardware store in Bay City, in which he had an interest, but which was subsequently destroyed by fire. Defendant appears to have been well reared and morally trained, living without reproach at home with her parents until she was married to complainant. The charges each now makes against the other, if true, not only would render them totally unfit to have the rearing of children, but brand each as of quarrelsome, immoral, vicious, and criminal tendencies which should ostracize them from decent humanity. It is evident from this record, taken as an entirety, that the criminations and recriminations of both are sadly exaggerated and illustrate in tragic fashion the extremes to which a revulsion of domestic impulses sometimes carries. The two respectable families of the parties have been drawn into this chapter of domestic infelicity and made an issue by reason of the litigants each residing with their parents and wishing to take their children there, involving the fitness of the proposed homes into which the children would go. Any detailed statement or review of the bitter charges and conflicting testimony found in this lengthy record would be unprofitable and demoralizing, and is unnecessary.

It is contended in behalf of defendant that, under its decision granting her a decree, not finding her an unfit person to have the custody, care, and control of her children, but, on the contrary, finding that she was a proper person, by awarding both to her until the oldest reaches five years of age and the youngest until legally qualified to choose for himself, the court was logically and legally bound to award her both without qualification under section 8689,

3 Comp. Laws (4 How. Stat. [2d Ed.] § 11537), which provides:

"SECTION 1. *The People of the State of Michigan enact*, that in case of the separation of husband and wife having minor children, the mother of said children shall be entitled to the care and custody of all such children under the age of twelve years, and the father of such children shall be entitled to the care and custody of all such children of the age of twelve years or over: *Provided*, that any probate court or any court of competent jurisdiction, may, on petition and hearing thereof, make and enforce such order or orders as it may deem just and proper as to the care and custody of such minor children, excepting in cases where an order or decree may have been made by any court in chancery regarding such children: *And provided, further*, that nothing in this act shall prevent any court of competent jurisdiction from making and enforcing any such order or orders as it may deem just and proper as to the care and custody of such minor children in the same manner and with like effect as it could if this act had not been passed."

It can be said of the foregoing section, taken as a whole, that it was intended as a general guide for the courts when in doubt as to which of the parents is the more fit, or when neither is shown to be unfit. It has been construed as meaning that *prima facie* the mother is best entitled to the custody of very young children, favoring her in that respect, and as meaning there should be preponderating reasons in favor of the father before it is otherwise provided. *Klein* v. *Klein*, 47 Mich. 518 (11 N. W. 367); *In re Knott*, 162 Mich. 10 (126 N. W. 1040).

The statute in question has never been construed as qualifying or restricting the inherent, broad, discretionary powers of a court of chancery to adjudicate as to the custody and control of children whose interests are before it, according to the varying elements for consideration arising in each case, and to make such disposition of each child as its best interests appear to demand. On the contrary, it was said in *Re Knott, supra:*

"There is nothing in either provision (sections 8689–

8701) which interferes with the right of a court of competent jurisdiction, upon investigation and upon consideration of the best interests of a minor child, to commit said child to the custody of either the father, the mother, or some other suitable person."

The fact that the parents are equally good, or equally bad, or even that one in some respects may be better than the other, is not necessarily the final test. Other considerations bearing on the welfare of the child may turn the scale.

By section 8631, 3 Comp. Laws (4 How. Stat. [2d Ed.] § 11468), the discretionary power of the chancery court is affirmed in clear language. When a decree of divorce is granted, " the court may make such further decree as it shall deem just and proper, concerning the care, custody and maintenance of the minor children of the parties, and may determine with which of the parents the children, or any of them, shall remain;" and by the next section (8632) the court can afterwards from time to time revise and alter its previous orders on the subject "as the circumstances of the parents and the benefit of the children may require." Such course has been recognized as proper and ratified by this court. *Griffin* v. *Griffin*, 154 Mich. 536 (118 N. W. 1); *Stone* v. *Stone*, 161 Mich. 565 (126 N. W. 710). The trial court recognized the possibility of such a contingency and provided for it in the decree. In his opinion the chancellor says:

" Under the provisions of 3 Comp. Laws, § 8632, the duty of the court in respect to the care and custody and maintenance of these children is a continuing duty. This section, among other things, was in mind when the order was made granting practically a rehearing upon the indicated question. The question as to what order should be made in respect to the care, custody, and maintenance of the children of the parties was one to which I gave my most careful thought and best consideration before making the decision of April 12th. I have gone over the matter again and have reconsidered it in the light of the additional testimony and arguments of counsel made thereon, and reach practically the same conclusion as reached in

the first opinion quoted.   *   *   *   I know of no case that I have been called upon to decide that I have given more earnest thought to in an attempt to reach such conclusion as would be for the best interest of the children and justice between the parties."

It is a salutary and well-recognized elementary rule of equity jurisprudence that one seeking aid from a court of chancery must come with clean hands, and, if not, the court will decline to act, leaving the parties where it finds them.   That rule, as applied to divorce, means that it is a remedy provided only for the innocent and injured party, and, if the evidence discloses that both have shown ground for divorce, neither is entitled to it.   It must be conceded, however, that there is a growing tendency in divorce cases to at times relax that rule, on grounds of public policy or the peculiar exigencies of the special case under consideration, and adopt one of comparative rectitude or turpitude.   This record, taken as a whole, breathes the suggestion that defendant's divorce comes more logically under the rule of comparison.   The court did not, and we think could not, find her blameless, and says:

"The defendant is not free from fault, and many reasons appear to favor a decree against her, but upon a careful weighing of the testimony and a consideration of the circumstances inclines me to a decree in her favor."

It is manifest, so far as human foresight can discern, that the enmity and bitterness which has developed precludes possibility of reconciliation.   Neither has appealed from the decree so far as divorce is concerned; complainant has acquiesced in all its provisions, and defendant complains only of the disposition of the eldest child and, contingently in that connection, of the allowance for its support.

Though chancery cases when appealed are, as a general proposition, heard *de novo,* in view of the position and claims of the respective parties, the condition of the pleadings, and the testimony, taken as a whole, we do not feel called upon to directly consider more than the one ques-

tion of the disposition made by the court of the oldest child, so tenaciously opposed on this appeal by defendant.

While the wishes and affections of the parents for the child are not to be ignored, they are a secondary consideration. The primary consideration is the welfare and happiness of the child, from the standpoint of education, moral and religious training, good influences, care, kind treatment, pleasant environments, and future prospects.

It is evident that the court, disinterested except in the discharge of a grave official responsibility, so viewed the matter. He made a thorough and unusually exhaustive investigation, and opened the door for all evidence the litigants proposed, and patiently heard everything which either side had to offer. The advantage of hearing and seeing the witnesses is not to be overlooked, and that is of particular importance in a case of this nature where personal bitterness, parental affection, family pride, and even neighborly partisanship tincture the testimony and lead the witnesses to extremes beyond the possibility of reconciliation. Not only the families, but the neighbors, have loyally lined up, and warmed up, on the respective sides where kinship and friendship naturally place them.

That both parents are fond of their children, would be kind to them, and care for them as best they could, we have no doubt; neither do we doubt that their zeal in the matter is quickened by a desire to prevent each other from being gratified in that particular. Both of them are sojourning with their parents, and neither has an independent home of his or her own to take their children to. The environments and home life where, so far as now appears, these children will be, are what the grandparents make them. In recognition of this, much testimony was introduced for defendant attacking the habits, character, and home life of complainant's parents, which was spiritedly reciprocated by complainant as to defendant's parents.

It was shown that in the home of complainant's parents beer and wine are kept and sometimes indulged in, and children have been allowed to partake. This also ap-

peared true of the home of the defendant's parents. We discover little distinction in that respect. The township of Frankenlust was settled by a German colony. They have vineyards and make wine and beer, using these beverages in moderation at their homes, according to their domestic and social customs. At their social and religious gatherings, hospitalities in that particular are extended to the teachers of their schools and pastors of their churches the same as other guests, without opprobrium or thought of wrongdoing. Whatever may be said of this in the abstract, we see no reason to discriminate on that ground.

Taken as a whole, the testimony leaves the impression that these families are respectable and respected, their members stand above the average in their communities, and lead moral, industrious, and wholesome lives. We think enough is shown to satisfy the court that each of the litigants has peculiarities of temperament, and faults which must be taken into account.

The welfare of both children must be considered by the court from every point of view, including their future prospects. The care, attention, and disposition toward them of the grandparents, into whose homes they go, is an element of much importance. It could well be thought that family pride and rivalry, as well as family affection, would result in each of these boys being more kindly treated, more carefully reared and better provided for, both in the present and future, if each of the families had one of them; and such a course might eventually better tend to a conciliation and co-operation between the grandparents, if not the parents. Primarily the court decides as a legal question between the parents, but the line of testimony introduced by the contending parties inevitably gives unusual importance to the relations of the children with their grandparents also.

We have endeavored to examine the testimony critically and have come to the conclusion that the result reached by the learned circuit judge should not now be disturbed.

The decree is affirmed, without costs.

Moore, Stone, Ostrander, and Bird, JJ., concurred with Steere, C. J.

Brooke, J. The record showing affirmatively that the mother is not morally unfit to care for her children, I am of opinion that the custody of both should have been awarded to her until each became 12 years of age. 3 Comp. Laws, § 8689 (4 How. Stat. [2d Ed.] § 11537).

McAlvay and Kuhn, JJ., concurred with Brooke, J.