## NICHOLS *v*. NICHOLS.

1. DIVORCE—ALIMONY.

 Where a decree of divorce in favor of the wife awarded to her the home subject to a mortgage and back taxes, and a land contract subject to deferred payments, without making any provision for her immediate needs, the decree will be modified, on appeal, to further award

On modification in divorce decree because of changed conditions, see note in 44 L. R. A. (N. S.) 1026.

On taking of child by or at instance of one parent from custody of other as kidnapping, see notes 32 L. R. A. (N. S.) 845 and L. R. A. 1915B, 189.

plaintiff sufficient to cover the mortgage and taxes on the home, deferred payments on the land contract and $60 per month for her support and that of the children, subject to further order of the court on proper showing.

2. SAME—MOTHER ENTITLED TO CUSTODY OF MINOR CHILDREN.

Under 3 Comp. Laws 1915, § 11484, in case of the separation of husband and wife having minor children, the mother, in the absence of some showing that she is unfit, is given the care and custody of the children until they are 12 years of age.

3. SAME—PRESUMPTION OF MOTHER'S FITNESS.

A presumption of the mother's fitness prevails until rebutted by some competent evidence.

4. SAME—CUSTODY OF MINORS AWARDED TO MOTHER.

Where there was evidence that defendant husband was profane and that he neglected to properly provide for his children, and that he was therefore an unfit person to be awarded the custody of minor children, and there was a showing that plaintiff was a fit person, the decree of the court below awarding the custody of two minor children to defendant will be modified, on appeal, and plaintiff given the care, custody, education, and control of said minors until further order of the chancery court, on changed conditions being shown.

Appeal from Wayne; Hunt (Ormond F.), J. Submitted October 12, 1922. (Docket No. 90.) Decided March 22, 1923.

Bill by Mary Nichols against Daniel Nichols for a divorce. From the decree rendered, plaintiff appeals. Modified and affirmed.

*James R. Thomas* (*Edward D. Devine*, of counsel), for plaintiff.

*Walter M. Trevor,* for defendant.

STEERE, J. Plaintiff was granted a decree of divorce from defendant on the ground of extreme cruelty. The parties were married in 1907 and had five living children, George, 12 years of age, being the

oldest, and June, aged 2 years, the youngest.    The court awarded to plaintiff George, June and Mary (11 years old) but gave to defendant custody of Eleanor and Charles, respectively 7 and 5 years old. Plaintiff appeals from the court's awarding to defendant custody and control of Eleanor and Charles, and from the amount of alimony awarded her for support of herself and children.

During their married life these parties resided in Detroit.    Defendant followed the plumbing and steam fitting business, at which he was apparently quite successful and at times took important contracts. At the time they ceased living together as husband and wife and this bill was filed, they occupied a home of their own valued at about $7,000, subject to an incumbrance amounting to approximately $1,100.

Plaintiff's bill was filed August 5, 1920, accompanied by a petition for temporary alimony, and asking custody of their minor children named in it.    The petition for alimony was opposed but after hearing counsel the court made an order requiring defendant to pay to the clerk of the court $35 per week for support of plaintiff and their children.    Defendant filed an answer with cross-bill on September 13, 1920, denying plaintiff's charge of extreme cruelty and failure to support.    In his cross-bill he charged her with religious bigotry, manifestations of which made his home life miserable, that by casting slurs upon his religious views and in other ways she sought to prejudice their children against him, and by her conduct constantly annoyed and embarrassed him, both in his home and business undertakings; in consideration of which he asked a decree of divorce from her with the custody and control of their minor children.    Plaintiff answered defendant's cross-bill in detailed denial of the charges made against her, with further charges against defendant of extreme cruelty and failure to

properly support her and their children, to an extent which had at one time impelled her to appeal for protection and relief to the public welfare association.

Although they had ceased living together as husband and wife when this bill was filed, defendant remained in their home for some time thereafter.    On June 21, 1921, he told plaintiff he wished to take their two children Eleanor and Charles down town, to which she consented.    He did not return, but took them with him to Canada as she later learned.    Her efforts to ascertain what became of him and their two children were unsuccessful until their oldest boy, George, received a letter from defendant mailed at Birchville, Ontario.    Plaintiff then went to Canada to try and find them but was unable to locate either him or the children.

On August 21, 1921, she filed a petition in the circuit court praying an order against defendant directing return of the two children to her custody, which was opposed by defendant's counsel but after a hearing the court entered an order that defendant return the children forthwith, she to have custody and control of them during pendency of the suit.    No attention was paid by defendant to this order and up to the time of the hearing of this case on October 7, 1921, he had paid no further alimony after taking himself and the two children out of the jurisdiction of the court, and was over $500 in default.

After making the customary investigation where there are minor children in a divorce case, the prosecuting attorney reported to the court that their home surroundings were good and plaintiff was a suitable person to have the care, custody and education of the minor children named in her bill of complaint, with the recommendation that if decree of divorce was granted provision be made for alimony to support her and them, payable to the clerk of the court.

On the hearing defendant was represented by counsel but did not appear in person or offer any evidence. Plaintiff produced undisputed testimony, by herself and others, showing that defendant had been guilty of the acts of extreme cruelty and failure at times to provide proper support as charged in her bill of complaint; that he was by calling a plumber and steam fitter and for some time before he left Detroit had profitably engaged in contracting with men working under him, that he had property consisting of their home, yet incumbered as stated, lot No. 271 Windmill Point subdivision, purchased under contract for the sum of $3,500, upon which about $1,200 remained unpaid; that he had a Buick sedan car and Ford truck when he left, and took the Buick sedan with him but disposed of the Ford truck; that he also had at the time he left over $3,000 owing him from one party, and in the spring of 1921 over $7,000 was due and owing him on various accounts; that plaintiff understood he owned another lot somewhere on Mack avenue in the Macomb subdivision, which she was unable to locate.

While out of the jurisdiction of the court with the two children sequestered, defendant made an offer to plaintiff through his attorney to give her the home, pay the mortgage on it, and pay her $50 per month for support of the children until they graduated from the high school, on condition that she consent to his having the two children which he had taken away. Claiming he was an unfit person to have their care and custody and that she as their mother could not consent to part with her children, she refused this offer.

On defendant's conduct towards plaintiff, and also as to his being a proper person to have the care and custody of their children, the record contains undisputed testimony of other apparently disinterested wit-

nesses strongly supporting her charges, the nature of which is indicated by the following excerpts:

Mrs. Marie Kimloch, who lived a near neighbor for a number of years, testified that she had ample opportunity to observe the conduct of plaintiff and defendant towards each other, saying in part:

"I have seen lots of things Mr. Nichols has done. I was there one day when he threw a telephone and hit the door. We could hear him without having to be in the house. * * * We could hear him in our bedroom! window. He was always abusive with her. A few times he didn't have enough to eat. * * * I heard him cursing and swearing during the entire five years I lived there. I never heard Mrs. Nichols swear. I have been there morning after morning and found Mrs. Nichols with nothing in the house to eat and the fires were not lit and the house was cold. This was in the fall when the weather was beginning to get cold. Mrs. Nichols in her condition could not go in the basement. * * * I know about the food because I have taken things over to the home there, made tea and took her over to our house. * * * I don't know anything about his business. The children were dressed neat and clean, as nice and clean as she had clothes to put on them. The house was very clean. She never let things slide as long as I knew her. She did her own washing and ironing."

Mrs. Louisa Perry, who lived next door to the parties, testified:

"I have seen him swear at her, call her names and abuse her, throw the chairs and break dishes. He broke my dish I sent Mrs. Nichols' rarebit in. * * * She didn't have enough to eat, and when her little baby was born they came over for tea and matches and bread to give her. He would not give the nurse money enough to buy bread. The nurse asked him three or four times. He was working every day and he is a big fat man about six foot—a big healthy man. Often Mrs. Nichols would come over after bread and eggs to give to the children so they could go to school. They didn't have bread in the house for the children's

supper. * * * The children cried for food. They didn't have it and we helped them. I took them over and gave them lunch, and Mrs. Nichols also."

Mrs. Ann Perry, who lived near the parties for about four years, testified:

"I heard him swear at her every morning in the week. I heard him until I started to work two years ago in September. I was in there many a day at lunch time and the children didn't have sufficient food. I have taken cakes and had Mrs. Nichols into my house, and the day the baby June was born and the nurse came out on the porch and asked Mr. Nichols to get the doctor twice, he was putting a tire on his car and paid no attention to the nurse, and she came over to my house and asked for two slices of bread so she would be able to give Mrs. Nichols something to eat after the baby came."

In connection with her decree of divorce the court awarded plaintiff the home, incumbered as stated, the part-paid land contract for lot 271 Windmill Point subdivision and a debt of $30 due defendant from a Miss Perkins, decreed that the property awarded her should also be in payment of the $525 alimony for which defendant was in arrears and that he pay plaintiff one dollar in lieu and full satisfaction of any claim for dowry she might have in any property he then owned or might thereafter own. The court further decreed that certain "stock of the parties hereto in the Detroit Bond & Mortgage Company" be the sole property of defendant.

This case was heard October 7, 1921. The decree was filed May 20, 1922. Tested by the record made at the time of the hearing the court's absent treatment of defendant would seem to be more favorable than he could have expected if not in default and present at the hearing. He had then defaulted in payment of temporary alimony since the preceding June 21st, had ignored the order of the court to re-

turn the two children he had taken to Canada, as to both of which delinquencies he was liable for contempt proceedings, but the court in his absence awarded him the two children, provided plaintiff no ready means to meet her immediate necessities and apparently did not assign for her needs the equivalent of what defendant himself offered to give her during pendency of the suit. His default in payment of the alimony ordered left her in sore need of means to support herself and children. The incumbered home with back taxes against it, and land contract of doubtful value with payments in arrears, were not income producing, or to her, without funds to meet those arrears, an immediate and sure means of support for herself and children.

The decree must be modified to further award of an amount sufficient to cover the mortgage and taxes on the house, deferred payments on the land contract and $60 per month for support of plaintiff and her children, subject to further order by the circuit court on proper showing.

By statute (3 Comp. Laws 1915, § 11484), the mother, in the absence of some showing of her unfitness, is given the care and custody of the children until 12 years of age. This provision was under consideration in *Weiss* v. *Weiss*, 174 Mich. 431, and this court there interpreted it in part as follows:

"It can be said of the foregoing section, taken as a whole, that it was intended as a general guide for the courts when in doubt as to which of the parents is the more fit, or when neither is shown to be unfit. It has been construed as meaning that *prima facie* the mother is best entitled to the custody of very young children, favoring her in that respect, and as meaning there should be preponderating reasons in favor of the father before it is otherwise provided. *Klein* v. *Klein*, 47 Mich. 518; *In re Knott*, 162 Mich. 10."

*Prima facie* plaintiff was entitled to the custody of

the two children when defendant by subterfuge took them from her and removed them beyond the jurisdiction of the court. A presumption of her fitness obtained until rebutted by some competent evidence. No such showing appears in this record. The testimony on that subject sustains the presumption in her favor. The prosecuting attorney in his report after investigation certified that she was a suitable person to have the care, custody and education of the minor children. The court on her application for custody of these two children, "being fully advised in the premises," committed them to her custody during pendency of the suit and ordered defendant to return them to her forthwith. Testimony taken at the hearing is confirmatory of her fitness with nothing to the contrary.

There is evidence of defendant's unfitness, in his repeated profanity and abuse of the children's mother in their presence, and neglect and failure at times to properly provide for them. He abandoned three of his children, leaving them with their mother without proper provision for their support, and failed to comply with the court's order directing payment of temporary alimony for that purpose.

On the record before us plaintiff is entitled to the custody of those children and the decree will be so modified, giving plaintiff the care, custody, education and control of the minor children Charles and Eleanor, until further order of the chancery circuit court of Wayne county, if changed conditions be shown.

Modified as indicated in this opinion the decree of divorce will stand affirmed, with costs of this court to plaintiff.

WIEST, C. J., and FELLOWS, McDONALD, CLARK, BIRD, and SHARPE, JJ., concurred. MOORE, J., did not sit.