## JOSLYN *v.* OHLMACHER.

DIVORCE—CUSTODY OF CHILD—DISCRETION OF COURT—STATUTES.

Where a wife consented that the decree of divorce should award the custody of their young son to the husband, and since that time she has not very frequently exercised her right of visiting the son or shown him the loving attention of a mother, and it appears that the husband has married again, that the stepmother has an affection for the child, that he has a good home, is being properly educated and has everything that one of his age and status in life could require, and it does not appear that it would be to his best interest to take him from the father and give him to the mother, her petition for a modification of the decree awarding the custody of the child to her, claiming that she is entitled to same under

On denial of custody of child to parent for its well-being, see note in 41 L. R. A. (N. S.) 564.

the provisions of 3 Comp. Laws 1915, § 11484, *held*, properly denied; said section, although favoring the mother, lodging a large discretion with the trial court.[1]

Appeal from Wayne; Marschner (Adolph F.), J. Submitted October 8, 1924. (Docket No. 36.) Decided December 10, 1924.

Petition by Margaret E. Joslyn (formerly Margaret E. Ohlmacher) against Horace H. Ohlmacher to amend a decree of divorce regarding the custody of a minor child. From an order denying the petition, plaintiff appeals. Affirmed.

*Moore & Wilson,* for plaintiff.
*Robert E. Plunkett,* for defendant.

Moore, J. The trial judge stated so clearly the issues involved in this proceeding that we quote his opinion as follows:

"The inquiry here is upon a petition filed by a mother, Margaret E. Joslyn (formerly Margaret E. Ohlmacher) to amend the original decree of divorce so as to regain the custody of a minor child, William Ohlmacher, who is now past nine years of age. A short recitation of the facts will serve to intelligently understand the position of the parties.

"Plaintiff and defendant were married in September, 1914, and lived and cohabited together until about April, 1920. The child here in question was the only issue of their marriage. Due to continual disagreements plaintiff and defendant arrived at the conclusion that they could no longer live together as husband and wife. They deliberately then, each having the benefit of the advice of counsel, agreed that the child, William Ohlmacher, should be taken to the mother of the defendant, who resides in Ann Arbor. Subsequent thereto on or about the 12th day of April they entered into a separation agreement, wherein the defendant was to pay the plaintiff alimony in the sum of $20 per week, and the defendant was to have the

[1] Divorce. 19 C. J. § 810.

custody of the child, William Ohlmacher, during the school year, the plaintiff to have the custody of said child during the summer vacation.    Later the plaintiff instituted an action for divorce against the defendant, and on the 10th day of September, 1920, took a decree of divorce *pro confesso,* wherein it was decreed that the defendant should have the care, custody and education of said child until he attained the age of 16 years, or until the further order of this court, with a reservation that the plaintiff have the right and privilege of seeing and visiting said minor child without hinderance or interference at any and all proper times, and to take such child with her within the State of Michigan, provided she returned the child to the defendant within a reasonable time.

"The defendant remarried on July 12, 1921, and the plaintiff remarried on the 10th of September, 1921. The child resided with defendant's mother from the time plaintiff and defendant first separated until early in September, 1921, when the defendant established another home for himself, and from that time until the present the child, William Ohlmacher, has resided with the defendant and his wife, Blanche Ohlmacher. In September, 1923, two years after the plaintiff remarried, this petition is presented to the court.    Upon an oral argument thereon the court is supplied with a volume of affidavits both on behalf of the plaintiff and the defendant.    At the request of the court the matter was set down for the taking of testimony so that the personal integrity and veracity of the parties might be more properly inquired into.

"It is conceded by the plaintiff that the defendant and his present wife are financially able to support, maintain and educate said child, and that they have a good Christian home, nor does petitioner deny that defendant is doing all that is necessary for the proper rearing of said child.

"Petitioner places her contention for relief strictly upon section 11484, 3 Comp. Laws 1915.    This section has been under consideration by the Supreme Court in many cases, presenting different and varying circumstances and statement of fact many times.    In the early case of *Corrie* v. *Corrie,* 42 Mich. 509, Justice GRAVES clearly states the issue before the court:

" 'In contests of this kind the opinion is now nearly universal that neither of the parties has any rights that can be allowed to seriously militate against the welfare of the child. The paramount consideration is what is really demanded by its best interests. It is doing no violence to what is taught by judicial experience to assume that the disputing parties will be more alive to the satisfaction of their own feelings and interests than to the true end of the inquisition; while the innocent subject of the contention is utterly unable to speak or act for itself, and is in danger of being lost sight of in the strife for its possession. No other occasion can call more loudly for judicial vigilance in reaching for the exact truth, and in putting aside with an unsparing hand the mere technicalities of procedure. The fate or interest of the child is not to depend upon what the parties may see proper to state or to evade in their former altercations, nor on any artificial rule of pleading.'

"In *Weiss* v. *Weiss*, 174 Mich. 431, the statute was again in part interpreted as follows:

" 'Taken as a whole, it was intended as a general guide for the courts when in doubt as to which of the parents is the more fit, or when neither is shown to be unfit. It has been construed as meaning that *prima facie* the mother is best entitled to the custody of very young children, favoring her in that respect, and as meaning there should be preponderating reasons in favor of the father before it is otherwise provided. *Klein* v. *Klein*, 47 Mich. 518; *In re Knott*, 162 Mich. 10.'

"In the late case of *Nichols* v. *Nichols*, 222 Mich. 119, an interpretation of the statute as well as the presumption of the mother's fitness was again emphasized. The circumstances and facts in that case as compared with the present record are widely different, however.

"The plaintiff urges as her reasons that her financial condition at the time she and the defendant first separated and at the time the decree was granted to her, she was unable to support the child in question, secondly, that her present marriage and comfortable circumstances afford her the opportunity of rearing a child properly.

"The bulk of the affidavits presented here are but of little value on the question considered here, and I have given the competent evidence submitted consider-

able thought. No issue is here made by the defendant as to the plaintiff's present financial and social ability to care for the child.

"I cannot agree with the petitioner in her first contention. With the advice of capable counsel as to her rights in the premises, the plaintiff chose to waive her right to the custody of her child, and the testimony discloses that the defendant has voluntarily paid her the sum of $20 per week alimony, and that in addition thereto she has always been able to earn a good income from her various enterprises; that her occupations were various, and the testimony is persuasive here that she chose to have her own freedom unencumbered by the care of their minor child. *Dailey* v. *Dailey,* 166 Mich. 170, 173.

"The conduct on her part in my opinion is so unlike the normal affection of a mother for her offspring that I am not persuaded that the change which has come into her life since her remarriage would justify a transfer of the child to her. I am not unmindful of the language in the latter case wherein the Supreme Court stated:

"'While it is generally true that a natural mother will do more for a child than a stepmother, that rule seems to be more often true where the stepmother has children of her own.'

"Here from an investigation made on behalf of the court subsequent to the hearing, and from a report of the friend of the court on file, and to be considered as part of this opinion, it is apparent that the stepmother has an affection for this child. In fact she has mothered this child as she would her own. Every care and detail has been lent to its education and in the matter of its health.

"It is true that the original stipulation of the parties as carried forth in the decree later granted can have but little force here since the circumstances and facts as presented to the court at the time of the hearing are controlling.

"Counsel for the plaintiff urges the citation of *Coyle* v. *Coyle,* 221 Mich. 76, as being controlling. An examination of the facts in that case shows that they widely differ from those presented here. There again it was stated:

" 'It is true a contract was made by the parents as to the custody of the child, but even this contract although recognized by the decree must later give way if the best interests of the child demand it.   *Gittings* v. *Gittings*, 197 Mich. 446.'

"From the examination that I have made into the merits of this controversy, I am convinced that the father bears every qualification of a good parent; that he lent his entire interest towards the welfare and best interests of his child, that every care and attention is being afforded it now.   It appears that the mother during the period in which the father has had absolute control of the child, likewise during the period when the grandmother had the custody of the child in Ann Arbor, exercised but infrequently the right granted to her of visitation.   It is apparent from the proofs taken here that during their married life the plaintiff was not at all times as attentive as she might have been to the duties of a mother.   This boy now advancing in his tenth year has grown attached to his father, and I do not find from the testimony here that the father has in any way influenced the boy as against his mother.   The little lovable attentions due from a mother to her child are lacking in the plaintiff's proofs. To give to the statute strict construction and thus displace this child from his present home and surroundings would not be for his betterment.   The fact is conceded that the child lacks nothing in the care of the father, and I do not see where his interests would be subserved by supplanting him now to a different city to begin over again under different circumstances.

"I believe, however, that the decree should be liberally construed in granting to the mother the right of visitation as well as the right of having the child at different intervals.   That is a matter for the parties to agree upon.

"It cannot be said from the evidence in this case that the best interests of the child would be subserved by granting the mother the relief that she prays for.   I am not underestimating the consideration that is due her in this application.   The proofs definitely disclose that the boy is well and healthy, is attending school as well as Sunday school regularly, is afforded every comfort and convenience, is being properly

educated and has everything that one of his age and status in life could require, as evidenced by the report of the friend of the court.    His public school record is good.    It shows his hygiene to be perfect, and other circumstances tending to shed a favorable light upon the defendant's claim.

"I cannot find that the plaintiff has established her right to relief as prayed for in her petition, and an order may be entered in accordance with this opinion."

An order was entered in accordance with the opinion. The case is brought into this court by appeal.

Counsel for the appellant lay great stress upon the provisions of 3 Comp. Laws 1915, § 11484, which read:

"*The People of the State of Michigan enact,* That in case of the separation of husband and wife having minor children, the mother of said children shall be entitled to the care and custody of all such children under the age of twelve years, and the father of such children shall be entitled to the care and custody of all such children of the age of twelve years or over: *Provided,* That any probate court or any court of competent jurisdiction, may, on petition and hearing thereof, make and enforce such order or orders as it may deem just and proper as to the care and custody of such minor children, excepting in cases where an order or decree may have been made by any court in chancery regarding such children: And *provided further,* That nothing in this act shall prevent any court of competent jurisdiction from making and enforcing any such order or orders as it may deem just and proper as to the care and custody of such minor children in the same manner and with like effect as it could if this act had not been passed."

Counsel urge that because of these provisions the mother should be favored.    It is a significant fact that the mother, though represented by competent counsel, did not invoke the aid of this statute when the decree of divorce was prepared, nor did she invoke its aid for nearly three years after the decree was entered.    On the contrary she consented to the decree,

and in doing this she carried out an agreement she had voluntarily made with her then husband.

The statute quoted has been in existence for more than 50 years. Its language indicates that large discretion is lodged with the trial court as to the custody of the children.

The question of what shall be done with the small children in divorce proceedings, or other disagreements between parents, has frequently been before this court. Some other cases than those cited in the opinion of the trial judge, which we have quoted, are *Nichols* v. *Nichols*, 222 Mich. 119; and *Greene* v. *Walker*, 227 Mich. 672, where nearly all the cases decided by this court are cited.

The idea running through all these cases was well expressed by Chief Justice STEERE in *Weiss* v. *Weiss*, 174 Mich. at p. 438, as follows:

"While the wishes and affections of the parents for the child are not to be ignored, they are a secondary consideration. The primary consideration is the welfare and happiness of the child, from the standpoint of education, moral and religious training, good influences, care, kind treatment, pleasant environments and future prospects."

The idea was somewhat differently expressed by Justice SHARPE, in the majority opinion filed in *Greene* v. *Walker*, *supra*, from which we quote as follows:

"The latest utterance of this court is found in *Re Adams*, 214 Mich. 199, wherein Chief Justice STEERE said:

"'The law makes him (the father) her guardian by nature and for nurture, *prima facie* entitled to her care and custody. Bearing in mind also the child's best interests, the courts will primarily "feel bound to restore the custody where the law places it, with the father, unless in a clear and strong case of unfitness on his part to have such custody." *Commonwealth* v. *Briggs*, 16 Pick. (Mass.) 203.'

"I have not overlooked the case of *In re Gould*, 174 Mich. 663. The contest there was between an aunt

and grandparents.    The opinion of Chief Justice Shaw in *Pool* v. *Gott*, 14 Law Reporter (Mass.), 269, is referred to at some length.    The holding in that case is thus stated at page 673:

" 'On a review of the whole case from every angle, it was held that the child should remain in the custody of its grandparents, to whom it was devotedly attached and with whom it preferred to live; the leading principle being that, when the right of the parent is not clear and imperative, the best interests and happiness of the child must always control the decision of the court.'

"The question of the father's right under the statute, into which so many considerations enter, is always one of fact."

It has already appeared that the mother consented to the decree as made, and has acquiesced therein for a long time.

The trial judge had the great advantage of hearing and seeing the witnesses.    We have read with care the affidavits and the correspondence filed and the testimony given in the court below.    We are not persuaded that the trial judge reached a wrong conclusion.

The order of the court below is affirmed.

CLARK, C. J., and McDONALD, BIRD, SHARPE, STEERE, FELLOWS, and WIEST, JJ., concurred.